**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

# RECEIVED

DOCKETED
JUL 2 5 2003

JUL 2 6 2003

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

DAVID D. ERCOLI

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

WILLIE PAIVA.
JENNIFER RAINEY.
JACKLYN MARION.
BRIAN VANDENBURGH.
DENNIS TATGENHORST.
NOAH L. HOLCOMB JR.
DANIEL KIRBY.
GARY TEUNE.
B. DORIAN.

JOHN DOE

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

JUDGE RONALD GUZMAN

# 03C 5172

Case No:_____
(To be supplied by the Clerk of this Court)

MAGISTRATE JUDGE DENLOW

JURY TRIAL DEMANDED..

IN THEY'RE INDIVIDUAL & OFFICAL CAPACITY..

**CHECK ONE ONLY:**

✓      **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
**U.S. Code (state, county, or municipal defendants)** $1985 $1985(3) $1986..

_____      **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE**
**28 SECTION 1331(a) U.S. Code (federal defendants)**

_____      **OTHER (cite statute, if known)**

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR*
*FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

**I.** **Plaintiff(s):**

A. Name: _David D. Ercoli_

B. List all aliases: _David D. Ultsch_

C. Prisoner identification number: _# 952813_

D. Place of present confinement: _Putnamville Correctional Facility._

E. Address: _1946 West U.S. Hwy 40 - Greencastle, IN 46135_

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, and current address according to the above format on a separate sheet of paper.)

**II.** **Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A. Defendant: _Mr. Willie Paiva_

Title: _U.S.A. Citizen_

Place of Employment: _Jewel Food Stores - Mattison, IL._

B. Defendant: _Ms. Jennifer Rainey_

Title: _Common Law Wife to Mr. Paiva._

Place of Employment: _Housewife._

C. Defendant: _Ms. Jacklyn Marion_

Title: _U.S.A. Citizen._

Place of Employment: _Unknown_

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

# * PART 2 OF DEFENDANT's *

**D.** DEFENDANT: MR. GARY TEUNE..

TITLE: U.S.A. CITIZEN.

PLACE OF EMPLOYMENT: LINCOLN TECH ..

**E.** DEFENDANT: MR. DENNIS TATGENHORST ..

TITLE: SERGEANT - LYNWOOD POLICE DEPARTMENT

PLACE OF EMPLOYMENT: 21460 LINCOLN HWY - LYNWOOD, IL

**F.** DEFENDANT: DANIEL KIRBY ..

TITLE: LYNWOOD POLICE INVESTIGATOR.

PLACE OF EMPLOYMENT: 21460 LINCOLN HWY, LYNWOOD, IL

**G.** DEFENDANT: MR. B. DORIAN ..

TITLE: POLICE OFFICER - LYNWOOD - P.D.

PLACE OF EMPLOYMENT: 21460 LINCOLN HWY, LYNWOOD, IL.

# * Part 2 of Defendants *

**H. DEFENDANT:** BRIAN VANDENBURGH

TITLE: DETECTIVE SERGEANT-SCHERERVILLE POLICE.

PLACE OF EMPLOYMENT: 25 E. JOLIET St-SCHERERVILLE, IN
46375

**I. DEFENDANT:** NOAH L. HOLCOMB JR.

TITLE: PUBLIC DEFENDER- LAKE COUNTY INDIANA

PLACE OF EMPLOYMENT: 2293 N. MAIN St-CROWN POINT, IN
46307

**J. DEFENDANT:** JOHN DOE - POLICE OFFICER

TITLE: LYNWOOD POLICE DEPARTMENT

PLACE OF EMPLOYMENT: 21460 LINCOLN HWY, LYNWOOD, IL

## III. Exhaustion of Administrative Remedies

You are required to exhaust all your available administrative remedies before bringing an action in federal court.

A. Is there a grievance procedure available at your institution?

YES ( ) NO (X) If there is no grievance procedure, skip to F.

B. Have you filed a grievance concerning the facts in this complaint?

YES (X) NO ( )

C. If your answer is **YES**:

1. What steps did you take?

I WROTE JUDGE — AND U.S. DEPARTMENT OF JUSTICE, POST OFFICE, PROSECUTER, PUBLIC DEFENDER ,,

2. What was the result?

I WAS DEPRIVED DUE PROCESS →

3. If the grievance was not resolved to your satisfaction, did you appeal?

What was the result (if there was no procedure for appeal, so state.)

I DID EVERYTHING THAT I COULD THINK OF.

D. If your answer is **NO**, explain why not:

E.     Is the grievance procedure now completed?   YES (X)   NO ( )

F.     If there is no grievance procedure in the institution, did you complain to authorities?   YES (X)   NO ( )

G.     If your answer is **YES**:

1.     What steps did you take?

*I WROTE U.S. DEPARTMENT OF Justice ALSO CIVIL RIGHTS DIV - A.C.L.U. Prosecuting Attorney - BERNARD CarteR.*

2.     What was the result?

*LETTERS Enclosed ExiBits*

H.     If your answer is **NO**, explain why not:



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### 219 SOUTH DEARBORN STREET
### CHICAGO, ILLINOIS 60604

**MICHAEL W. DOBBINS**
CLERK

*Exibit*

**PRISONER CORRESPONDENCE**
312-435-5794

April 16, 2002

David Ercoli - a/k/a Ultsch
XA442
Lake County Jail
2293 N. Main Street
Crown Point, Indiana 46307

Dear Mr. Ercoli:

We hereby acknowledge receipt of your letter requesting legal assistance and/or advice. Please be advised that we work for the U.S. District Court. We are not attorneys and are precluded by federal law from answering questions of a legal nature. We are also prohibited from interpreting the rules. You should direct your questions to an attorney who will be more able to give you the legal advice you seek, or contact the law library at your institution. We regret that we cannot assist you in this matter.

Sincerely,


Prisoner Correspondent



Exibit

168-26-0/182571

*Special Litigation Section - PHB*
*950 Pennsylvania Avenue, N.W.*
*Washington, DC 20530*

June 26, 2002

David Ercoli-Ultsch
2293 N. Main St.
Crown Point, IN  46307

Dear Mr. Ercoli-Ultsch:

Under the Civil Rights of Institutionalized Persons Act, (CRIPA) 42 U.S.C. ' 1997 et seq., the United States Department of Justice has authority to investigate complaints concerning conditions in public institutions.  These institutions include prisons, jails, juvenile facilities, mental health and retardation facilities, and publicly operated nursing homes.

When a pattern or practice of the deprivation of constitutional rights is determined to exist, we have the authority to initiate civil actions against state or local officials to remedy unconstitutional conditions.  This authority does not extend to investigating the personal grievances of a single individual.  The Department of Justice is not authorized to represent individual citizens in legal matters or to give them legal advice.  Therefore, we are unable to provide you with legal opinions or assistance with personal lawsuits or legal matters.

If you wish to pursue this matter further, you might consider contacting a private attorney or a legal services lawyer.  This individual may assist you in determining what, if any, remedies may be available to you.

Thank you for your correspondence.

Sincerely,

Special Litigation Section
Civil Rights Division

**STATE OF INDIANA**



**DISCIPLINARY COMMISSION
OF THE
SUPREME COURT**

**INDIANAPOLIS, IN 46204**

115 West Washington Street
Suite 1165 South Tower
Phone (317) 232-1807
Fax (317) 233-0261
TDD For Deaf: (317) 233-6111

**DONALD R. LUNDBERG**
EXECUTIVE SECRETARY

November 25, 2002

David Ercoli  #XA442
Lake County Jail
2293 North Main Street
Crown Point, Indiana 46307

Dear Mr. Ercoli:

   Pursuant to your request, enclosed is a copy of the entire grievance that you filed with this office concerning attorney Noah L. Holcomb, Jr.

Sincerely,

Donald R. Lundberg
Executive Secretary

DRL/jw

# *Public Defender of Indiana*

One North Capitol, Suite 800
Indianapolis, Indiana 46204-2026
(317) 232-2475

April 15, 2002

Mr. David Ercoli Ultsch  XA442
Lake County Jail
2293 North Main Street
Crown Point, Indiana  46307

Dear Mr. Ultsch:

Your recent letter requesting assistance with your trial level case has been received by our office.  Please be advised that our office can only act on behalf of criminal defendants charged with a crime where we have been appointed by the court pursuant to Indiana Code 33-9-11-1.  Therefore, where counsel has already been appointed our office could not advise you or undertake to represent you.

If you are having difficulties contacting your attorney, or if you are not sure who that attorney is or whether an attorney has been appointed, then you should advise the trial court of this in writing and ask for the court's assistance.  If that does not help, or if there are other problems where counsel cannot assist you, then you should advise the court of this in writing and/or upon your next appearance in court.

In any case, the services of this office cannot be available to you without a court appointment.

Best wishes,

Susan K. Carpenter
Public Defender of Indiana

SKC/bwb

EXIBIT

DAVID ERCOLI/ULTSCH- X17442
L.C.I. 2293 N. MAIN STREET
CROWN POINT, INDIANA 46307

MR. BERNARD A. CARTER - PROSECUTER
OFFICE OF THE PROSECUTING ATTORNEY
2293 N. MAIN STREET
CROWN POINT, INDIANA 46307

46307+1234

T.Thompson

MR. Bernard A. Carter, Prosecuter:        4-28-02

Goodmorning! I'm writing in regaurds to my Constitute
Rights being violated. in ~~NOVEMBER 2001~~

On or about the Month of January 2002 and
the beginning of Febuary 2002. I David W. Escolo,
sent Several letters "U.S. mail" to my brother
Timothy Ultsch in refference to my criminal court
proceedings here at Lake Superior Court. I am
a detainee in the lake county jail awaiting
trial on charges of Auto theft. Several letters
that I sent my brother were delivered to his
address, ~~that~~ being unknown to me nor the Post
masters, My brother did not reside at that address
anylonger. These letters were received by Ms.
Jennifer Rainey and opened, Read and turned
over to her sister Ms. Jacklynn Rainey who
gave them to her boyfriend Gary Tenue whom
is a witness against myself in a criminal
proceeding. MR. Gary Tenue immediately gave these
~~stolen letters~~ to State's Attorney JAMES THOMPSON
of the Lake Superior Court who is using said letters
as evidence, of self incrimination against me
in my criminal court proceeding. I feel that my
Constitutional Rights under the 1st and 4th Amend
ments to the United State's Constitution has been
violated by the State's attorney uffice of the Lake
Superior Court. Under the 1st and 4th Amendments to the
[SEE NEXT PAGE]

United States constitution, I have a right to freedom of speech and a right to privacy. these constitutional rights were not only violated by the states attorneys office of the Lake Superior Court. But also by a Ms. Jennifer Rainey and Jacklyne Rainey & Gary Tenue.. Due to these 3 individuals intercepting my letters addressed to my brother, and turning them over to the States attorney for prosecution against myself has caused me to sustain a irrepairable damage to my court proceeding.. In sustaining damage these letters were revealed to the Judge who is presiding over my case, The Honorable Judge Thomas P. Stefaniak Jr. inturn after reading these letters denied me a continuance in preparing my defense, this Judge took a serious offense toward my case and demanded it to be set for trial. despite my motion for a fast and speedy trial. I feel that by the Honorable Judge Thomas P. Stefaniak Jr receiving these letters played a significant role in his decision about granting me a continuance to prepare a defense and moving my case up for trial by jury. Had it not been for the Judge receiving and reading these letters that was addressed to my brother I believe his decision in my case would not have been impaired by these letters. I first became aware of the stolen mail by my public defender on March 8th 2002. While at court Mr. Holcomb P.D. asked bailiff that he needed to talk with me in the back room Mr. Holcomb then advised me of the letters that I had wrote my brother ending up in Gary tenue Hands

My attorney, Mr Holcomb said that the Judge had read said letters. During the corse of time that morning o. March 8th, I asked the judge for a continuance so that I can get witnesses together and also depositions from the police. "I also made request in form of letter" that I needed more time.. He stated to me ("you wanted a fast and Speedy trial, Your going to get a fast and Speedy trial"). I also requested to be heard by him instead of having a jury trial.. Trial was set for March 11th 200. We picked a jury on that date of March 11th 2002. My Public defender asked the court for a continuance to depo Gary Tenure. March 13th my public defender needed more time to deposition police officer. But, I needed to deposition all police officers involved.. Noah Holcomb asked the court for another continuance. Prosecutor JAMES THOMPSON advise's the court that if I should get another continuance that he will file the habitual offenders act against me. The Judge informs me that its an additional 54 month.. I felt I was under pressure and duress at this point and my public defender demanded the continuance so I agreed to the continuance which caused a mis-trial.. The Honorable Judge THOMAS P. STEFANIAK JR after reading said letters that were stolen denied me a continuance and caused the State's attorney's office to seek a more sever sentence. The Judge took a serious offence toward my case and caused irrepairable Damage to my court proceeding. When talking to my brother during a visit he stated that he never read

I even seen said letters.. MR Holcomb showed said letters to my brother. My brother stated to me that h never left any mail when he moved. So during the corse of my brother living there Jennifer Ramey stoled said U.S. Mail - My brother also stated that there was a stack of letters. I've also have mail missing that never was delivered to the people I wrote. This could very well be because of detainees handling other detainee mail in XA Pod. We have no mail boxes in our pod. I've complained about this and also the delivery of our mail, it should not be given to another detainee to deliver to his cell And yet its still being done and there still is no mail box in XA pod..

I'm closing with Respect
David D. Ercole AKA ULTSCH

I sware this to be true to the best of my knowledge and belief..

Notary DONT NEED



# STATE of INDIANA



**DISCIPLINARY COMMISSION
OF THE
SUPREME COURT**

*ExiBit*

**INDIANAPOLIS, IN 46204**

115 West Washington Street
Suite 1165 South Tower
Phone (317) 232-1807
Fax (317) 233-0261
TDD For Deaf: (317) 233-6111

**DONALD R. LUNDBERG**
EXECUTIVE SECRETARY

October 15, 2002

David D. Ercoli
Lake County Jail, XA
2293 North Main Street
Crown Point, Indiana 46307

Dear Mr. Ercoli:

Normally; a disciplinary grievance and a law suit would be independent matters and neither one would affect the other

Paul Jeffrey Schlesinger has never been disciplined by the Indiana Supreme Court. Noah L. Holcomb, Jr. received a Private Reprimand in 1998, the contents of which are not public.

Enclosed is a Request for Investigation form and information pamphlet.

Sincerely,

Donald R. Lundberg
Executive Secretary

DRL/jw

**IV.**     List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court (including the Central and Southern Districts of Illinois):

A.     Name of case and docket number: _____ NONE _____

_____

B.     Approximate date of filing lawsuit: _____ NONE _____

C.     List all plaintiffs (if you had co-plaintiffs), including any aliases: _____

_____

_____

_____

D.     List all defendants: _____ NONE _____

_____

_____

_____

E.     Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____ NONE _____

F.     Name of judge to whom case was assigned: _____ NONE _____

_____

G.     Basic claim made: _____ N/A _____

_____

_____

H.     Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _____ N/A _____

_____

_____

H.     Approximate date of disposition: _____ NONE _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

## \* JURISDICTION \*

4. THIS COURT SHALL HAVE ORIGINAL JURISDICTION OF ALL CIVIL ACTIONS AUTHORIZED BY LAW TO BE COMMENCED BY ANY PERSON PURSUANT TO TITLE 28 U.S.C. $ 1343 (3) AND 28 U.S.C. $1331 AND SHALL COMMAND DIVERSITY OF CITIZEN-SHIP PURSUANT TO TITLE 28 U.S.C. $ 1332 (1) AND ARTICLE III SEC 2 (1) U.S.C. AND SHALL TAKE JUDICIAL NOTICE PURSUANT TO 201 (d) TO 28 U.S.C. $ 1733 (B). ALSO SEE: 42 U.S.C. $ 1983 $ 1985 $ 1985 (3) AND $ 1986..

Complaint:

## \* NOTICE OF ACTION \*

1. IN THIS ACTION THE PLAINTIFF, DAVID D. ERCOLI, AKA DAVID D. ULTSCH (HERE IN AFTER) ERCOLI WAS INCARCERATED IN THE COOK COUNTY JAIL IN ILLINOIS ON CHARGES OF POSSESSION OF STOLEN PROPERTY, AND OBSTRUCTION OF JUSTICE AND OR RESISTING POLICE OFFICER FROM AUGUST 16th 2001 UNTIL DECEMBER 7, 2001 AT WHICH HE WAS EXTRADITED TO THE LAKE COUNTY JAIL, CROWN POINT INDIANA ON THE DATE OF DECEMBER 7, 2001 FOR THE ARREST OF TWO AUTO THEFTS, WHICH ERCOLI WAS SUBSEQUENTLY CONVICTED OF AUGUST 14th 2002.

2. ERCOLI IS CURRENTLY LOCATED AT THE PUTNAMVILLE CORRECTIONAL FACILITY LOCATED 1946 WEST U.S. HWY 40, GREENCASTLE, INDIANA 46135 \*

3. THIS IS A CIVIL RIGHTS ACTION BEING BROUGHT BY THE PLAINTIFF PURSUANT TO 42 SEC. 1983 U.S.C. CONST. AMENDMENTS 1, 4, 5 AND 14 AND 18 U.S.C. § 241 - 242 AGAINST THE DEFENDANTS UNDER DIVERSITY OF CITIZEN -SHIP, WHERE THE DEFENDANT DID ENGAGE UNDER COLOR OF STATE LAW IN A CONTINUEING CIVIL AND CRIMINAL CONSPIRCY, BY PROFFERING FALSE STATEMENTS OF SLANDER TO A CITIZEN SUSPECT TO INDUCE AND COERCE ANGER AND COOPERATION AGAINST THE PLAINTIFF, BY BURGLARIZING PLAINTIFFS PROPERTY, TOWING AND IMPOUNDING AND SUBSEQUENTLY ACTIONING OFF PLAINTIFFS CAR, BY INCARCERATING PLAINTIFF ON STATEMENTS AND EVIDENCE KNOWN TO THEM TO BE FALSE, AND TO ENSURE PLAINTIFFS CONTINUED CUSTODY DIRECTED, ACQUIESCED, AND CONDONED THE STEALING OF PERSONAL PROPERTY "U.S. MAIL", LETTERS MAILED FROM THE PLAINTIFF TO A SECOND PARTY 'FAMILY MEMBER", WHERE SAID STOLEN LETTERS

WERE USED IN A UNLAWFUL CONSPIRATORY MANNER AGAINST THE PLAINTIFF TO ILLEGALLY CONVICT THE PLAINTIFF IN THE STATE OF INDIANA. WHILE ERCOLI MAKES NO CLAIMS CHALLENGING THE CONVICTION IN THIS SUIT. HECK VS HUMPFREY, 114 Sct. 2364 (1994) But RATHER ASSERTS the totality OF THE ACTIONS VIOLATING HIS CIVIL RIGHTS, WHERE AS THE DEFENDANT'S ACHIVED these OBJECTIONS BY SUPPRESSION, CONCEALMENT, PRESENTATION OF KNOWN FALSE AND STOLEN EVIDENCE, ALONG WITH TRICKERY, DECEIT, FRAUD, theft AND UNETHICAL PRACTICES AND CONDUCT FOR A PUBLIC OFFICAL WORKING IN CONCERT WITH PRIVATE CITIZENS CONTRARY TO THEIR OATH OF OFFICE AND IN VIOLATION OF THE PLAINTIFFS RIGHTS TO LIFE LIBERTY AND THE PURSUIT OF HAPPINESS.

HERE the DEFENDANT'S INDIVIDUALLY AND JOINTLY, BY CONSPIRING IN COMBINATION, CONSORT AND AGREEMENT DID CONSPIRE FOR THE PURPOSE OF DEPRIVEING EITHER DIRECTLY OR INDIRECTLY THE PLAINTIFF OF THE EQUAL PROTECTION OF THE LAWS. WHERE THE DEFENDANTS DELIBERATLY AND WILLFULLY ACTED OUTSIDE THE SCOPE OF THEY'RE JURISDICTION OF THEY'RE RESPECTIVE OFFICES AND WITH OUT LAWFUL AUTHORITY OF THE LAW, AND THESE ACTIONS WERE CALCULATED OR DID INFACT SUBJECT the PLAINTIFF TO A DEPRIVATION OF RIGHTS UNDER COLOR OF LAW AND ARE the DIRECT AND PROXIMATE CAUSE OF THE WRONGS AND LOSS OF LIBERTY that the PLAINTIFF HAS BEEN FORCED to SUFFER GIVING RISE TO THIS CIVIL RIGHTS ACTION PURSUANT TO 42 U.S.C. § 1983 WHERE IN BY LAW THE PLAINTIFF ERCOLI IS ENTITLED TO CIVIL REDRESS.

Complaint:

(11)

# *Multiple Claims*

FIRST CAUSE: ON AUGUST 16th 2001 WHILE IN THE TOWN-SHIP OF LYNWOOD, ILLINOIS. DEFENDANT GARY TEUNE WAS ARRESTED AND CHARGED WITH POSSESSION OF BURGLARY TOOLS, TEUNE RELATED TO SERGEANT DENNIS TATGENHORST THAT THE SECOND PARTY WHO ACCOMPANIED HIM WHICH FLED WAS NAMED, DAVID ERCOLI, WHO ALLEDGED SUCCESSFULLY HAD FLED..

TEUNE, GAVE THE ALLEDGED FLEEING PARTY'S NAME AS DAVID ERCOLI THE PLAINTIFE, WHERE THIS LEAD TO A MAN HUNT FOR THE PLAINTIFF WHICH SOME 8 HOURS LATER, ERCOLI WAS OUTSIDE HIS RESIDENCE WORKING ON A VAN. LYNWOOD POLICE OFFICERS: D. KIRBY AND OFFICER: B. DORIAN CAME UP TO ERCOLI TO QUESTION HIM., OUTSIDE OF THEIR JURISDICTION IN THE TOWNSHIP OF CHICAGO HEIGHT, ILLINOIS WITHOUT THE PRESENTS OF CHICAGO HEIGHTS POLICE. THESE OFFICERS KIDDNAPPED PLAINTIFF FROM HIS RESIDENCE, THEY PLACED PLAINTIFF UNDER ARREST WITHOUT A WARRENT FOR HIS ARREST. ERCOLI WAS THEN TAKEN TO LYNWOOD POLICE DEPARTMENT AGAINST HIS WILL FOR QUESTIONING. AT WHICH ERCOLI DECLINED TO TAKE PART IN.. AS TIME PASSED ERCOLI'S CAR., AND APARTMENT AT 1541 ABERDEEN ST, CHICAGO HEIGHTS, WAS FORCEFULLY ENTERED WITHOUT LEGAL AUTHORITY OF THE LAW I.E. (SEARCH WARRENT PROCESS) OR A WARRENT FOR HIS PERSONAL ARREST.

AND AS A RESULT OF THE SEARCH OF PLAINTIFF'S CAR A 1982 CAMARO-Z-28 COLLECTERS EDITION AND LEGALLY PARKED IN THE TOWNSHIP OF LYNWOOD, ILLINOIS. OFFICERS KIRBY AND DORIAN BY THE ADVISE

OF SERGEANT DENNIS TATGENHORST ORDERING OFFICER DANIEL KIRBY AND OFFICER DORIAN TO ILLEGALLY ENTER PLAINTIFF'S LOCKED CAR AND TATGENHORST LOOKED AT PLAINTIFF AND SAID, AND BE SURE TO LOOK UNDER THE HOOD OF THE CAR FOR TOOLS. WHILE THE SEARCH OF ERCOLI'S VEHICAL THE OFFICERS KIRBY AND DORIAN SEIZED TWO PAGERS AND ONE OF THE PAGERS WAS A COMPUTER PAGER.

AND FROM ERCOLI'S RESIDENCE. WHICH HE RENTED A ROOM FROM DEFENDANT'S WILLIE PAIVA AND HIS COMMON LAW WIFE JENNIFER RAINEY AT 1541 ABERDEEN STREET- CHICAGO HEIGHTS, ILLINOIS. THE TWO DEFENDANT'S PAIVA AND RAINEY GAVE PERMISSION TO INVESTIGATOR DANIEL KIRBY AND OFFICER B. DORIAN AND ALSO A SCHERERVILLE, INDIANA DET- -ECTIVE SERGEANT BRIAN VANDENBURGH TO FORCEFULLY ENTER ERCOLI'S LOCKED ROOM AND SEIZE TWO GARBAGE BAGS OF UNKNOWN PERSONAL PROPERTY. THIS HAPPENED ON THE DATE OF AUGUEST 16, 2001. SEE EXIBIT: VANDENBURGH'S REPORT.

HOW EVER AS A RESULT OF THE SEIZED COMPUTER PAGER FROM ERCOLI'S CAR, ERCOLI WAS CHARGED WITH POSSESSION OF STOLEN GOODS AND OBSTRUCTION OF JUSTICE/RESISTING POLICE FOR REFUSEING TO PARTICIPATE IN ANY CUSTODIAL INTERROGATION OR PROVIDE ANY STATEMENTS..

HOW EVER WHILE OFFICER KIRBY AND DORIAN AND SERGEANT DENNIS TATGENHORST WERE ATTEMPTING TO INTERROGATE ERCOLI, A MECHANISM WAS IN PLACE TO SIMULTANEOUSLY INTERROGATE DEFENDANT, GARY TEUNE, WHO WAS TRICKED INTO MAKING FALSE AND INCRIMINATING STATEMENTS AGAIST ERCOLI, WHILE IT IS TRUE TEUNE ORIGINALLY IMPLACATED ERCOLI AS BEING THE ALLEDGED SUSPECT THAT FLED FROM THE ORIGINAL INVESTIGATORY STOP, THAT LEAD TO DEFENDANT TEUNE BEING CHARGED WITH POSSESSION OF BURGLARY TOOLS ON AUGUEST 16, 2001., IT SHOULD BE NOTED THAT THIS WAS THE EXTENT OF GARY TEUNE'S COOPERATION..

FURTHER WHEN DEFENDANT'S DANIEL KIRBY, DORIAN AND TATGENHORST GAVE TEUNE THE FALSE INFORMAT- -ION THAT ERCOLI HAD MADE STATEMENTS BLAMEING HIM

Complaint: (13)

OF CRIMES SUCH AS ATTEMPTING TO BREAK INTO VIDEO POKER MACHINE NEAR THE LOCATION OF HIS ARREST AND THAT ERCOLI WAS "PUTTING THE BLAME ON HIM". Exibit Teune's Deposition Pg 27- 6 thru 8 line.

AND DEFENDANT TEUNE FEELING MALICE AND RETALITORY SOUGHT REVENGE AGAINST ERCOLI BY NAMEING HIM IN TWO SEPERATE THEFTS OF MOTOR CYCLES WHICH DEFENDANT TEUNE APPARENTLY STOLED OR PARTICIPATED IN STEALING ON JULY 1ST AND 16TH, 2001.. SEE EXIBIT: PAGE 28.

AND THOUGH ERCOLI KNEW LITTLE OF DEFENDANT GARY TEUNE'S ILLEGAL ACTIVITUS, BECAUSE ERCOLI AND TEUNE LIVED IN THE SAME HOME WERE THEY BOTH RENTED ROOMS FROM DEFENDANT WILLIE PAIVA AND HIS COMMEN LAW WIFE JENNIFER RAINEY. ERCOLI HAD NO PART IN THE THEFT OF THE MOTORCYCLES.

BUT IT WAS BECAUSE OF DEFENDANT'S KIRBY, DORIAN AND TATGENHORST USE OF DECEPTIVE PSYCHOLOGICAL INTERROGATION TECHNIQUES THAT LEAD TO DEFENDANT TEUNE TO GIVE THE FALSE IMPLICATION STATE- -MENTS AGAINST PLAINTIFF ERCOLI ABOUT THE THEFT OF THE MOTOR CYCLES.

AND TO FURTHER THE TARGETING OF THE PLAINTIFF. THE DEFENDANTS KIRBY, DORIAN AND TATGENHORST AND AN UNKNOWN JOHN DOE. DID IN A ARBITRARY RETALIATORY MOVE, ORDERED ERCOLI'S 1982 CAMARO- -Z-28 COLLECTORS EDITION TOWED AND IMPOUNDED. AND A ORDER TO "STOP-HOLD" BE PLACED ON THE CAR TO PREVENT ERCOLI'S FAMILY TO RETRIVE THE VEHICLE, WHILE ON THE OTHER HAND ALLOWED THE IMPOUND BILL TO CONTINUE TO MULTIPLY..

THESE ACTIONS WERE ILLEGAL AND DID VIOLATE ERCOLI'S 1st AMENDMENT RIGHTS TO BE FREE FROM RETALIATION FOR THE PROTECTED RIGHT TO REMAIN SILENT, HIS 4th AMENDMENT RIGHT OF HIS PERSON AND PROPERTY TO BE FREE FROM ALL ILLEGAL SEARCH AND SEIZURES, AND DEFENDANT'S ACTIONS CAUSED ERCOLI'S 1982 CAMARO-Z-28 TO BE AUCTIONED OFF BASED ON ERCOLI'S INABILITY TO PAY THOUSANDS OF DOLLARS IN FEES FOR TOWING AND IMPOUND BILL.

HERE THE PLAINTIFF SUBSEQUENTLY APPEARED IN MARKHAM ILLINOIS CIRCUIT COURT ON OR ABOUT 8-18-2001 ON THE CHARGES OF POSSESSION OF STOLEN PROPERTY (A COMPUTER PAGER) AND OBSTRUCTION OF JUSTICE / RESISTING PEACE OFFICER. AND AS A RESULT OF THE COMPUTER PAGER BEING LEFT IN ERCOLI'S CAR BY DEFENDANT TEUNE. AND ERCOLI DEMANDING JUSTICE BY WAY OF A JURY TRIAL, ALL CHARGES AGAINST ERCOLI WERE DISMISSED ON 10-22-01 AND THE MALISCIOUS CHARGES BECAME NOLL AND VOID LEAVING ERCOLI SUFFERING BOTH MENTAL AND PHYICAL INJURY AS WELL AS HARM, GIVING RISE TO THIS CIVIL ACTION PURSUANT TO 42 U.S.C. $ 1983 $1985 AND $1986. SEE: EXIBIT 14

SECOND CAUSE: AGAINST THE DEFENDANT'S TATGENHORST, DANIEL KIRBY AND DORIAN CONSPIRED WITH SERGEANT BRIAN VANDENBURGH ON AUGUEST 16, 2001. THAT DURING THE PENDENCY OF THE POSSESSION OF STOLEN PROPERTY, WHEELS WHERE IN MOTION IN A CONSPIRATORY MANNER BY TATGENHORST, KIRBY, DORIAN AND SERGEANT VANDENBURGH TO MANUFACTURE CRIMINAL CHARGES AGAINST ERCOLI FOR THE THEFT OF TWO STOLEN MOTOR CYCLES IN

Miscellaneous Incident Investigation Narrative

Incident Description:
On 07-15-01 at approx. 12:35am Schererville Police Units were
dispatched to the Paragon Restaurant in reference to a motorcycle
that had just been stolen. The motorcycle was last seen by the
victim exiting the South Exit of the restaurant going SB St. John
Road.

When the dispatch came in Lt. Decrescenzo was in the area of US 30
and St. John Road. Lt. Decrescenzo checked SB St. John Road and
the area of Patterson but was unable to locate the motorcycle. Both
St. John and Dyer PD was also made aware of the theft, but neither
department located the vehicle.

I met with the owner of the motorcycle Dusan M. Ivetich. Ivetich
advised he was in the Paragon restaurant when he heard the muffled
sound of a motorcycle. Ivetich said he exited the restaurant and
noticed a motorcycle taillight exiting the restaurant to SB St. John
Road. Ivetich also noticed that his motorcycle was no longer parked
facing North on the sidewalk on the East side of Paragon. Ivetich
said he then went inside and got the owner of the Paragon. They
then got into the owner's vehicle and checked SB on St. John Road
and Patterson, but could not locate the vehicle.

Ivetich described the motorcycle as a 2001 Harley Davidson
Springer Softail. The motorcycle was concord purple in color. The
motorcycle also had the license plate mounted on the left rear end,
a rock chip in the front fender, a chrome dash plate with a flame
on the plate, a solid back rim and a spoked front rim, short exhaust
pipes, and a hypercharger. Ivetich described the motorcycle as
chromed out, and he also advised their was approx. 850 to 900 miles
on the bike.

Premises location and description:
1545 US Hwy 30 Schererville, IN 46375. Paragon Restaurant.
Other information:
Ivetich advised the Motorcycle was valued at over $25,000, and is
insured by Farm Bureau.

The plate on the vehicle was 177384 Indiana.

The motorcycle was entered into NCIC/IDACS as stolen. Also a S03
was sent out to area departments.

There was no evidence at the scene.
Date, time, reporting officer:
7-16-01, 2:03am, Cpl. Lea 143.

S30. Mr. Ivetich saw ~~the~~ motorcycle being driven s~~o~~n on St John
~~R~~d when it was taken. The vehicles identification number was
HD1BLY161Y048147.

~~n July 25, 2001 Sgt. Some~~ville from Antioch Il recovered Iv-
vetich's motorcycle during the exucation of a search warrant on the
~~h~~ome of Daniel Edwards located at 290 North Ave. Antioch, Il. Sgt.
~~S~~omerville informed me that Edwards was running in apparant motorcycle
chop shop" and "re-tagging" operation out of his garage.

~~n August 16, 2001 I received a phone call from Investigator Kirby, o~~
~~he Lynwood PD~~ He informed me that he two suspects in custody and
~~t~~hat one of the suspects volunteered information about the theft of two
~~H~~arley Davidson motorcycles from Schererville about a month ago.
~~T~~he two suspects in custody were identified as Gary Teune and David
~~E~~rcoli.

~~A~~fter being advised of his civil and consitutional rights Gary Teune
~~g~~ave a statement regarding this case. Teune stated that about four
~~w~~eeks ago David Ercoli returned home on a red/white Harley Davidson
~~H~~eritage motorcycle. Ercoli asked Teune to drive him back to
~~S~~chererville to retrieve his car from the Enterprise Leasing lot near
~~t~~he Quest Lounge. Teune stated that Ercoli later told him that he had
~~t~~aken the Heritage motorcycle from the Quest Lounge. After picking
~~u~~p Ercoli's blue Camaro Teune followed him to the parking lot of the
~~P~~aragon in Ercoli's brown 1985 Ford van. Teune watched as
~~E~~rcoli parked his vehicle in the lot and then take the purple Harley
~~D~~avidson soft tail from near the enterance of the Paragon. Teune
~~f~~ollowed Ercoli south on St John Rd and turn right towards Dyer. Teune
~~s~~tated that he pulled over in the area of a school and helped Ercoli
~~l~~oad the motorcycle into Ercoli's van. They both the returned to their
~~h~~ome at 1541 Aberdeen St. Chicago Hts., Il. Teune stated that he next
~~d~~ay Ercoli emptied the contents from the saddle bags on the Heritage
~~m~~otorcycle. Included was a pad lock that was thrown into the weeds
~~n~~ext to their garage, a pager with a keyboard, a cellphone, and a
~~h~~elmet cover. Ercoli also removed two chrome fork tube covers and
~~p~~laced them into the garage. Teune stated he last saw the pager in
~~E~~rcoli's Camaro. Teune stated that Ercoli then loaded the Heritage
~~i~~nto the van and took them both to Antioch to sell them for $2000 a
~~p~~iece. Teune stated that he did not go with Ercoli on that day but
~~r~~eturned with Ercoli on July 19, 2001 While on their way to a concert
~~i~~n an attempt to receive payment. Teune stated that the house was a
~~w~~hite two story with a garage in the back. He also stated there was a
~~w~~hite Chevy or GMC box truck in the driveway. Teune stated that he saw
~~t~~he two motorcycle in the persons garage along with numerous frames and
~~p~~arts. He described the suspect a white male average height
~~a~~nd thin. Teune stated that Ercoli never received payment because his
~~f~~riend was raided by the police. Teune stated that the soft tail was
~~r~~ecovered during the raid but the Heritage had been dumped in a forest
~~p~~reserve prior to the raid.

~~n August 15, 2001 Investigator Kirby, Ofc. Dorian and myself took~~
~~Teune~~ to 1541 Aberdeen St., where he voluntered to show us some of
~~t~~he items taken from the Heritage motorcycle. Lynwood PD obtained a
~~p~~ermission to search from the homeowner at 1541 Aberdeen St. Teune and

*(handwritten margin note, right side)* TEUNE STATED IN WISCONSIN IN MY JURY TRIAL.

*(handwritten margin note, right side)* THIS IS WHEN THEY ENTERED MY APARTMENT WITHOUT WINTON

*(handwritten note, bottom)* YEAH OFCORSE HE KNOWS WERE THE STUFF WAS AT. I WOULD NEVER LEAVE SOMETHING STOLEN AROUND THE HOUSE!

COMPLAINT:                    (15)

SCHERERVILLE, INDIANA ON JULY 15TH, 2001 AND JULY 16TH, 2001.

HERE ERCOLI, NEVER MADE ANY STATEMENTS — CONCERNING THE THEFTS OF THE TWO MOTOR CYCLES IN QUESTION, NEVER HAD POSSESSION OR CONTROL OVER SAID STOLEN MOTOR CYCLES, POLICE NEVER CAUGHT THE DAVID ERCOLI WITH A STOLEN MOTOR CYCLE, IN FACT THE ONLY EVIDENCE AGAINST ERCOLI WAS A "COMPUTER DAGER" FOUND IN ERCOLI'S CAR THAT DEFENDANT TEUNE HAD LEFT THERE AND THEN THE STATEMENTS MADE BY THE AGRIVED MALICE HOLDING DEFENDANT GARY TEUNE, YET TEUNE WAS NEVER CHARGED IN THE CRIMES, IN FACT TEUNE WAS GIVEN A PASS ON HIS BURGLARY TOOL CASE IN MARKUM COURT HOUSE, SO THAT HE CAN FREELY TESTIFY AGAINST ERCOLI WITHOUT NO CONVICTION DODING US ON THE BURGLARY TOOL CASE OR EVEN NO REFARRENCE TO HIS ARREST IN AUGUST 16, 2001. TEUNE WAS GIVEN A PASS ON HIS POSSESSION OF BURGLARY TOOL CASE BY DEFENDANT TATGEN HORST OF LYNWOOD POLICE DEPARTMENT. **SEE EXIBH PAGE 15-16** *

THIS IS ESPECIALLY DISTURBING WHERE MR. TEUNE IS THE ONLY ONE WHOM HAD ANY INFORMATION CONCERNING THE THEFTS OF THE MOTOR CYCLES, SUCH AS WHERE THEY WERE STOLEN FROM, WHEN THEY WERE STOLEN AND THEY'RE COLOR AND MAKE OF BIKES.

ON DECEMBER 7TH 2001 PLAINTIFF ERCOLI WAS ILLEGALLY TRANSFERED FROM ILLINOIS TO INDIANA'S LAKE COUNTY JAIL WITHOUT BEING AFFORDED AN APPRODIATE EXTRADITION HEARING, IN CONNECTION WITH THE THEFT OF THE TWO MOTOR CYCLES.

EXHIBIT 15 - TEUNE'S DEPO

1    A.    Yes.

2    Q.    Now a minute ago you said something about

3          speedy trial with reference to these

4          possession of burglary tools charge?

5    A.    Yes.

6    Q.    Who wanted a speedy trial in that case? Is

7          that something you asked your lawyer for, or

8          something the lawyer did on his own or her

9          own?

10    A.    That is what the lawyer was taking care of.

11          I didn't know what was going on. When the

12          judge got up there, my lawyer asked the cop

13          a question. The cop answered it. The judge

14          said case dismissed.

15    Q.    Do you know what question the judge asked

16          the lawyer?

17    A.    No, I really don't.

18    Q.    Do you know what question your lawyer asked

19          the judge?

20    A.    I know what question my lawyer asked the

21          cop.

22    Q.    I am sorry. What is the question that the

23          lawyer asked the cop?

24    A.    He asked him if he had seen me walking

25          toward any business or not. The cop said

15

1     ~~no. The judge said by the power of the~~

2     ~~Supreme Court — after that then he started~~

3     ~~speaking too fast. I couldn't understand~~

4     ~~him. And my lawyer said I was free to go.~~

5  Q.  ~~And this is the same cop that arrested you~~

6     ~~for the possession of burglary tools, is~~

7     ~~that correct?~~

8  A.  ~~Yes.~~   Tatgenhorst

9  Q.  That is the same cop who had rode up to you

10    guys and asked you what you were doing out

11    there, is that correct?

12 A.  Yes.

13 Q.  He is also the same cop that you had told

14    that you and David were planning on breaking

15    into some video or poker machines at some

16    bar, is that correct?

17 A.  I don't remember.

18 Q.  Well, the cop who is on the witness stand

19    testifying, is that the same cop who had

20    asked -- who placed you under arrest?

21 A.  Yes.

22 Q.  Is he the same cop who was the first one you

23    came into contact with when you and David

24    were walking together?

25 A.  Yes.

                                            16

THIRD CAUSE: AGAINST DEFENDANT'S WILLIE PAIVA, GARY TEUNE, JACKLYN MARION, JENNIFER RAINEY, AND ALSO INVESTIGATOR DETECTIVE SERGEANT BRIAN VANDENBURGH AND OTHER UNKNOWN NAMED DEFENDANT'S. WHO OPENLY AND TACITLY CONSPIRED TO VIOLATE ERCOLI'S CIVIL RIGHTS.

NOTE: A CONSPIRACY CLAIM CAN BE BROUGHT UNDER $ 1983 PRIVATE PERSONS WHO CONSPIRE WITH STATE OR LOCAL GOVERNMENTS AND EMPLOYES OR OFFICALS ARE CONSIDERED TO ACT UNDER COLOR OF LAW AND MAY BE SUED UNDER $ 1983

SEE: DENNIS VS SPARK, 449 US 24, 27-28, 101 SCt 183 (1980) AND ALSO, BENDIBURG VS DEMPSEY, 909 F. 2d 463, 469 (11TH CIR 1990) CERT denied, 111 SCt 2053 (1991)

HOWEVER AFTER BEING DETAINED IN THE LAKE COUNTY JAIL CROWN POINT, INDIANA ERCOLI SUBSEQUENTLY LEARNED FROM FAMILY AND FRIENDS THAT ALTHOUGH HE WAS CHARGED WITH TWO COUNTS OF AUTO THEFT, DEFENDANT TEUNE HAD ABSOLUTLY NO CHARGES, AND ERCOLI BEGAN A HOST OF PRIVATE 1ST CLASS LETTERS, WRITING TO HIS BROTHER TIMOTHY ULTSCH WHERE IN ERCOLI DISCUSSED HIS CURRENT SITUATION. POSSIBLE STRATEGY AND MIMMUM DETAILS THAT HE KNEW OR HAD HEARD ABOUT THE ALLEDGED AUTO THEFTS OF THE MOTOR CYCLES IN QUESTION THAT ERCOLI ASSUMED GARY TEUNE HAD COMMITTED.

AND THE LETTER WRITING TOOK PLACE DURING A FIVE MONTH PERIOD OF NOVEMBER, 2001 THROUGH MARCH, 2002 AND A TOTAL OF SOME 6 LETTERS WHERE WRITTEN BY ERCOLI TO HIS BROTHER TIMOTHY AND WHERE RECEIVED BY WILLIE PAIVA AND HIS COMMON

LAW WIFE JENNIFER RAINEY WHOM RENT ROOMS AT 1541 ABERDEEN ST, CHICAGO HEIGHTS, ILLINOIS.. THE LETTERS WHERE DELIVERED AT THE ABOVE ADDRESS AND WERE STOLEN THEN GIVEN TO JACKLYN MARION WHO IS JENNIFER RAINEYS SISTER. JACKLYN MARION GAVE STOLEN AND OPENED LETTERS TO HER FIANCE, MR. GARY TEUNE.. GARY TEUNE THEN GAVE THIS U.S. MAIL TO SERGEANT BRIAN VANDENBURGH AND VANDENBURGH WORKING IN CONCERT WITH the DEFENDANT'S, PAIVA, RAINEY, MARION AND MR. GARY TEUNE DEVISED A TACIT AND DIOBOLICAL PLAN TO MONITOR AND STEAL U.S. MAIL WRITTEN BY ERCOLI, WROTE TO HIS BROTHER TIMOTHY ULTSCH, THESE FIVE INDIVIDUALS CONSPIRED TOGETHER TO STEAL, OPEN, READ SAID LETTERS. SEE: EXIBITS, AND ALSO, DEPOSITIONS OF VANDENBURGH AND MR. GARY TEUNE,. ALSO SWORN TESTIMONY OF VANDENBURGH & TEUNE. NOTE: THE LETTER PURPORTED TO BE DATED 12-12-01 WAS ALTERED AND DATED BY SOMEONE OTHER THEN ERCOLI.. SEE: EXIBIT-5-1E FURTHER NOTE: Its Important to point out that prior to ERCOLI's Arrest, HE LIVED AT THE RESIDENCE OF 1541 ABERDEEN ST, CHICAGO HTS, ILLINOIS ALONG WITH DEFE- -NDANT's PAIVA, RAINEY, MARION AND TEUNE, AND NOT INVOLVED PARTY TIMOTHY ULTSCH. THE CONSPIRACY TO STEAL THE CORRESPONDENCE between the two BROTHERS ERCOLI AND ULTSCH WAS designed to OBTAIN IMCULPATING EVIDENCE OF CRIMINAL ACTIVITY AND OR LEGAL STRATEGYS THAT ERCOLI MAY HAVE, AND THIS DISTURBING STORY ESCULATED TO, WITHOUT NOTICE TO ERCOLI, TIMOTHY ULTSCH MOVED OUT OF THE 1541 ABERDEEN STREET ADDRESS AND PAIVA, RAINEY MARION AND TEUNE CONSPIRED WITH VANDENBURGH AND DID INTERCEPT THE UNITED STATES MAIL ADDRESSED TO TIM- -OTHY ULTSCH FROM ERCOLI, AND WITHOUT LEGAL AUTHORITY

```
 1   STATE OF INDIANA      )
                           )    SS:
 2   COUNTY OF LAKE        )

 3                              IN THE SUPERIOR COURT,
                                CRIMINAL DIVISION, ROOM #4
 4                              CROWN POINT, INDIANA.

 5   STATE OF INDIANA         )
                              )
 6        v.                  )  CAUSE NUMBER
                              )  45G04-0108-CF-00181
 7                            )
     DAVID D. ERCOLI          )
 8
```

 9                    THE DEPOSITION OF
                   DETECTIVE VANDENBURG

10

11          The deposition of DETECTIVE VANDENBURGH,

12   taken before JANE RENFROW, Official Court

13   Reporter of the Superior Court of Lake County,

14   Criminal Division, sitting at Crown Point,

15   Indiana, under the laws of criminal procedure,

16   for discovery, by agreement of the parties as to

17   time and place, at the Criminal Court Building,

18   Crown Point, Indiana, on the 14TH day of MARCH,

19   2002.                                    *THURSDAY*

20

21                    APPEARANCES:

22                    JAMES THOMPSON,
                      Deputy Prosecuting Attorneys
23                    For the State of Indiana

24                    NOAH L. HOLCOMB,
                      Attorneys at Law
25                    Representing the Defendant

                                                    1

                      JANE RENFROW
                 OFFICIAL COURT REPORTER

```
1       WHEREUPON THE FOLLOWING PROCEEDINGS

2    WERE HELD ON THE 14TH DAY OF MARCH, 2002.

3                  BRIAN VANDENBURGH,

4    having been called as a witness, and having

5    been first duly sworn, testified as follows:

6                DIRECT EXAMINATION

7                       BY

8                  NOAH HOLCOMB.

9    Q.   State your name and present occupation?

10   A.   Brian VanDenburgh, V-A-N-D-E-N-B-U-R-G-H, a

11        Detective/sergeant, Shererville Police

12        Department, INDIANA

13   Q.   Okay.  Sergeant VanDenburgh, you came into

14        contact with David D. Ercoli, also known as

15        David Ultsch, in regards to the

16        investigation of two motorcycle thefts that

17        occurred in July of 2001, is that correct?

18   A.   Correct.

19   Q.   When did you first come in contact with Mr.

20        Ercoli with regard to these two motorcycles?

21   A.   My first contact was after I received a

22        phone call from detectives at Lynwood, Illinois

23        advising me they had two people in custody.

24        And that one of them was cooperating and

25        gave them some information that he knew
```

                                              2

1    the jurisdictions were on that.  I don't see

2    any on there.

3  Q.  You're looking at the printout from the

4    Indiana what?

5  A.  From the National crime computer.

6  Q.  No identifiable record in the State of

7    Indiana according to the NCIC check, is that

8    correct?

9  A.  Correct.

10  Q.  Okay.  Have you had any subsequent

11    conversations with Mr. Teune since that

12    interview you had with him wherein he signed

13    the statement admitting to his involvement

14    and Ercoli's involvement in the theft of

15    these two motorcycles?

16  A.  Yes.

17  Q.  When did you last have a conversation with

18    him?

19  A.  Yesterday.

20  Q.  And prior to that time, you had a

21    ~~conversation with him on March the 4th,~~ is      GARY TEUNE

22    that correct?  That would have been Monday

23    before last?

24  A.  Yes.

25  Q.  And that is when "he turned over some letters"

21

| | | |
|---|---|---|
| 1 | | to you that have been --? STOLEN. |
| 2 | A. | Yes. |
| 3 | Q. | Okay. Did you ask him where he got the |
| 4 | | letters from? |
| 5 | A. | Yes. |
| 6 | Q. | And what did he tell you? |
| 7 | A. | That Timothy Ultsch had left them in his -- |
| 8 | | his girlfriend's mother's house. Lie. |
| 9 | Q. | By his girlfriend, this is Mr. Teune's |
| 10 | | girlfriend's mother's house, right? |
| 11 | A. | Correct, who was at the time Timothy |
| 12 | | Ultsch's girlfriend. But she passed away. |
| 13 | Q. | Did you ask him whether or not the letters |
| 14 | | were opened or unopened when he got them? |
| 15 | A. | ~~I believe they were opened.~~ L/W |
| 16 | Q. | That is what he told you, is that correct? |
| 17 | A. | Well, it might have been what his girlfriend |
| 18 | | told me. It might have been what he told me |
| 19 | | or they both told me. |
| 20 | Q. | Was she present when you got the letters |
| 21 | | from him? ~~JACKLYN MARION~~.. |
| 22 | A. | Yes, I think that was her, yeah. |
| 23 | Q. | There was a female present when you |
| 24 | | interviewed him? |
| 25 | A. | Right, right. |

22

```
1    Q.    Has he talked with you about working as some
2          kind of an informant for the Schererville
3          P.D. or any other P.D.?
4    A.    No.
5    Q.    Okay.  When the letters were handed to you,
6          they were already opened, is that correct?
7    A.    Yes.
8    Q.    Along with the envelopes?
9    A.    On two of the letters, yeah.
10   Q.    Have you had occasion to talk with -- I
11         maybe butchering the pronunciation of the
12         name.  Dsan Lvetich?
13   A.    Yes.
14   Q.    Did Mr. Lvetich give you any kind of a
15         description of the person who he saw riding
16         away on his motorcycle on July 15th or
17         16th?
18   A.    I don't know if we had that conversation,
19         but the record may reflect what he told
20         another officer or something.
21   Q.    Did you have occasion to have records faxed
22         to you or reports faxed to you from Antioch
23         Police Department?
24   A.    Yes.
25   Q.    And do you recall that description of the
```

VANDENBURGH
SAID ON THE STAND
"ALL ENVELOPES WERE THERE"

GARY TEUNE'S Deposition
PAGE 46 to NO ENVELOPES!

24

1    officer, no, I wouldn't.  I would use my

2    discretion and not charge him.

3  Q.  And that is because of his cooperation, is

4    that correct?

5  A.  Correct.

6  Q.  Have you discussed that with Mr. Teune, that

7    you would not be bringing charges against

8    him regardless of what happens to Mr.

9    Ercoli, as long as Mr. Teune cooperates

10   fully in this trial against Mr. Ercoli?

11  A.  Yes.

12  Q.  When did you tell Mr. Ercoli that?

13  A.  Monday, March 4th.

14  BY MR. THOMPSON:

15       Tell Ercoli?

16  A.  I am sorry.

17  BY MR. HOLCOMB:

18  Q.  You told Mr. Teune ~~March~~ MONDAY the 4th, when you

19   got the letters from him, that you would not

20   be filing charges against him, is that

21   correct?

22  A.  Correct.

23  Q.  And now you also mentioned that you had a

24   conversation with Mr. Teune Wednesday, MARCH 13, 2002

25   yesterday, is that correct?

26

1    A.    Correct.

2    Q.    And can you tell me what that conversation

3          was all about?

4    A.    It was about what kind of cars Tim drives

5          and about the threats that were made against

6          him for appearing in court, and about him

7          coming to the Schererville Police Station so

8          I could escort him here because he was in

9          fear of his life for testifying.

10   Q.    Did you tell Mr. -- I am sorry. Did Mr.

11         Teune tell you, in fact, that he had been to

12         Mr. -- Mr. Ultsch's house several times in

13         the last two weeks for dinner and

14         socialized?

15   A.    Prior to March 4th, yes, he had been. He

16         works with his brother.

17   Q.    Did Mr. Teune tell you yesterday that as

18         late as last Friday he had dinner at Mr.

19         Ultsch's home, which would have been four

20         days after he gave the letters to you?

21   A.    No, we never discussed that. Supp Note 3-4-2002 Tried
                                          to steal more letters.

22   Q.    He didn't tell you that?

23   A.    He told me that he has daily contact with

24         him. He told me that. And by my

25         suggestion, that he carry on his business as

                                                        27

Hand-written margin notes:
Tim's false statement, had to go home with letters. 3-8-02
4 days late
Tim knocked Pls under cover

```
1    STATE OF INDIANA      )
                           )     SS:
2    COUNTY OF LAKE        )

3                                IN THE SUPERIOR COURT,
                                 CRIMINAL DIVISION, ROOM #4
4                                CROWN POINT, INDIANA.

5    STATE OF INDIANA         )
                              )
6         v.                  )  CAUSE NUMBER
                              )  45G04-0108-CF-00181
7    DAVID D. ERCOLI          )
                              )
8

9                    THE DEPOSITION OF:
                        GARY TEUNE

10

11        The deposition of GARY TEUNE, taken before

12   JANE RENFROW, Official Court Reporter of the

13   Superior Court of Lake County, Criminal Division,

14   sitting at Crown Point, Indiana, under the laws

15   of criminal procedure, for discovery, by

16   agreement of the parties as to time and place, at

17   the Criminal Court Building, Crown Point,

18   Indiana, on the 12TH day of MARCH, 2007.

19

20                    APPEARANCES:

21                    JAMES THOMPSON,
                      Deputy Prosecuting Attorneys
22                    For the State of Indiana

23                    NOAH L. HOLCOMB,
                      Attorneys at Law
24                    Representing the Defendant

25                                                    1
```

1           WHEREUPON THE FOLLOWING PROCEEDINGS

2       WERE HELD ON THE ~~12TH DAY OF MARCH, 2002~~

3                ~~GARY TEUNE,~~

4       having been called as a witness, and having

5       been first duly sworn, testified as follows:

6              <u>DIRECT EXAMINATION</u>

7                     <u>BY</u>

8               <u>NOAH HOLCOMB.</u>

9   Q.   My name is Noah Lewis Holcomb, Jr..  I am

10       the attorney for David Ercoli, who you may

11       know as David Ultsch.  Any questions that I

12       ask you, if you don't understand the

13       questions, ask me to repeat them and I will

14       repeat the question to you in perhaps a

15       different way so that if you don't

16       understand it, you can answer.  You must

17       answer out loud and say yes and no to a

18       question rather than shake your head and say

19       uh-huh and uh-uh.  Do you understand that?

20   A.   Yes.

21   Q.   Have you ever had your deposition taken

22       before?

23   A.   No.

24   Q.   Have you ever testified under oath anywhere

25       before, either at some kind of a hearing or

                                                             2

1     talking to when he was -- when you overheard

2     David say that you were solely responsible

3     for the plan to break into the video or the

4     poker machines?

5  A.  I don't know.

6  Q.  Was it the same officer who came back and

7     told you, yeah, ~~this guy is laying~~

8     ~~everything on you~~ Was it the same one?

9  A.  No.

10  Q.  A different officer? — DORIAN

11  A.  Yes.

12  Q.  Do you recall his name?

13  A.  I only know the one detective's name that

14     was there.

15  Q.  What is that officer's name?

16  A.  ~~Detective Kirby~~

17  Q.  Kirby.  And which person was Kirby talking

18     to?  Was he talking to you or was he talking

19     to David?

20  A.  I really don't know.  He was in and out of

21     the back and going and coming and leaving

22     and coming back.  I don't know.

23  Q.  What have you been told could happen to you

24     with regards to your involvement in helping

25     to load the motorcycles onto David's van so

                                                    27

| | | |
|---|---|---|
| 1 | Q. | That is in Chicago Heights also? ILLINOIS |
| 2 | A. | Yes. |
| 3 | Q. | Did you tell Sergeant VanDenburgh that you |
| 4 | | were and you felt threatened by Timothy |
| 5 | | Ultsch? |
| 6 | A. | Yes. |
| 7 | Q. | This is the same Timothy Ultsch who you |
| 8 | | testified earlier you had gone to his house |
| 9 | | several times, just lately this past |
| 10 | | Saturday to have dinner, is that correct? |
| 11 | A. | Yes. |
| 12 | Q. | Did he tell you to come there by gun point? |
| 13 | A. | No. |
| 14 | Q. | What specific threats did Timothy Ultsch |
| 15 | | make to you? |
| 16 | A. | Specific threats. He said he was going to |
| 17 | | lock me in a trunk. He said he was going to |
| 18 | | handcuff me around a pole. He was going to, |
| 19 | | excuse my language, kick my ass. |
| 20 | Q. | Now you turned over some letters to Sergeant |
| 21 | | VanDenburgh that same day, did you not? |
| 22 | A. | Yes. |
| 23 | Q. | Where had you gotten those letters from? |
| 24 | A. | From my fiance. JACKLYN MARION |
| 25 | Q. | From your fiancee? |

44



IMPORTANT EXHIBIT — TEUNE'S DEPOSITION TAKEN 3/2002

```
 1    A.   Yes.
 2    Q.   Where was she living at the time?          JACKLYN MARION
 3    A.   At time her sister's.          JENNIFER RAINEY
 4    Q.   Which address is what?
 5    A.   1541 Aberdeen Street.
 6    Q.   When you got the letters from her, were they
 7         already opened?
 8    A.   Yes.
 9    Q.   What is her name again?
10    A.   Jacklyn Marion.
11    Q.   Jacklyn Marion is the daughter of Timothy
12         Ultsch's ex-girlfriend, is that correct?
13    A.   Yes.
14    Q.   There is bad blood between the ex-girlfriend
15         and Timothy Ultsch is there not?
16    A.   Yes.   SHE'S DEAD, HOW CAN THERE BE BAD BLOOD?
17    Q.   How does Jacklyn feel about the bad blood
18         between them?
19    A.   She don't get along with Timothy Ultsch.
20    Q.   She don't?          REASON TO STEAL MY MAIL
21    A.   She don't get along with Timothy Ultsch.
22    Q.   Have you received any other letters
23         allegedly written by David Ercoli from
24         Timothy Ultsch?  Have you received any other
25         letters from her?
                                                       45
```

**JANE RENFROW**
**OFFICIAL COURT REPORTER**



LETTERS

1   A.   There's six letters total, I think, I gave
2        Detective VanDenburgh.
3   Q.   Six letters?
4   A.   Yes.

IN VANDENBURGHS SWORN TESTIMONY ALL HAD ENVELOPES!

5   Q.   Did you give him the envelopes also?
6   A.   There weren't no envelopes. I think there
7        were -- VanDenburghs Deposition Page 24-9 thru ALL TWO,,

MORE STATEMENTS CUT OUT

8   Q.   Where had you got these letters from?
9   A.   From her.
10  Q.   Every letter you got, which is supposedly
11       written by David Ercoli to Timothy Ultsch,
12       you got from Jacklyn Marion?
13  A.   Yes, because she was living at her sister's
14       house and they were just laying there after
15       Tim moved out.
16  Q.   When did Tim move out of that address?
17  A.   I have no idea.
18  Q.   Well, --?
19  BY MR. HOLCOMB:
20            Off the record.
21            WHEREUPON A BREAK WAS HAD AND
22       THEREAFTER THE DEPOSITION RECONVENED AND THE
23       FOLLOWING PROCEEDINGS WERE HAD.
24  BY MR. HOLCOMB: (cont. Direct examination).
25  Q.   Back on the record.  You have been to

46

1    you not?

2    A.    Yes.

3    Q.    After that when the police officer came to

4          your house is when you had still gone to

5          Timothy's house several times to eat?

6    A.    I think I went twice after the officer came.

7    Q.    Twice after the officer came?

8    A.    Yes.

9    Q.    Did you ever tell Timothy that you returned

10         those letters that were addressed to him

11         over to the police?

12   A.    No, he never asked.

13   Q.    But you didn't volunteer the information

14         either, did you?

15   A.    No.

16   Q.    Did you ever tell him that he was receiving

17         letters at 1541 Aberdeen, which had been

18         opened by someone else and given to you?

19         Did you ever tell Timothy that?

20   A.    No.

21   Q.    Okay. Have you talked to any mail

22         inspectors as to what kind of a crime that

23         might constitute?

24   A.    No.

25   Q.    After you gave your statement to the police

53

**JANE RENFROW**
**OFFICIAL COURT REPORTER**

```
 1    A.   No.

 2    Q.   What do you call it?

 3    A.   Dirty dishwater blond.

 4    Q.   Did you read the letters that Timothy Ultsch

 5         -- I am sorry.  Did you read the letters

 6         that were written by David Ercoli allegedly

 7         to Timothy Ultsch?

 8    A.   Bits and pieces.          MARION

 9    Q.   When Jacklyn gave you those letters, did she

10         say anything to you about what was in them?

11    A.   No.

12    Q.   What did she say to you when she gave them

13         to you?  How did the subject even come up?

14    A.   After Tim moved out, she said that Dave was

15         writing her notes, writing Tim notes.

16    Q.   Did you know where Timothy was working at

17         the time?

18    A.   Did I know where?

19    Q.   Yes.

20    A.   No.

21    Q.   You didn't know where to find Timothy?

22    A.   When are you talking about?

23    Q.   Let me rephrase this.  These letters were

24         written, at least according to the dates on

25         them, somewhere between December of 2001 td
```

72

yeah?

JANE RENFROW
OFFICIAL COURT REPORTER

1     March of 2002. My question to you is from

2     December of 2001, before Christmas, up until

3     this time, did you know where Timothy Ultsch

4     was working?

5     A.   Yes.

6     Q.   Okay.  Where was he working?

7     A.   Big Top.

8     Q.   Same place with you?

9     A.   Yes.

10    Q.   He was working there first, was he not?

11    A.   Yes.

12    Q.   When did you first start working there?

13    A.   A week after he did.

14    Q.   A week after he did?

15    A.   A week or two.

16    Q.   Okay.  And that would have been about what

17    month?

18    A.   Towards the end of January.

19    Q.   The end of January?

20    A.   Middle or the end.

21    Q.   Okay.  Why didn't you turn those letters

22    over to Timothy since you knew where he was

23    working and you knew where to find him?

24    A.   I didn't receive the letters until --.

25    Q.   I am sorry.

73

1   A.   I didn't receive the letters until --.

2   Q.   Until March?

3   A.   Two days before I got subpoenaed.

4   Q.   Why didn't you turn the letters over to

5        Timothy?

*evidence stolen & opened*

6   A.   They were considered -- I don't know.  He

7        left them when he moved out of Jacklyn's

8        sister's house. NO THESE LETTERS WERE BEING STOLEN,,

9   Q.   My question to you, sir, is when the police

10       came and asked you for those letters and

11       told you that they knew about these letters,

12       why didn't you tell the officer these belong

13       to Timothy Ultsch?  I am going to give them

14       to him?

15  A.   I don't know.

16  Q.   I am sorry.

17  A.   I don't know.

18  Q.   Before the police officer got there to get

19       the letters from you, did you get a phone

20       call from someone telling you that the

21       police were on their way to get those

22       letters?

23  A.   Yes.

24  Q.   Who did you get a phone call from?

25  A.   Wait, the letters?

KNOW ABOUT THE LETTERS?

74

1    Q.    No, who did you get a phone call from?  Who

2          told you that the police were on their way

3          over to see you?

4    A.    Jacklyn's sister. — JACKLYN MARION. / JENNIFER RAINEY.

5    Q.    What did she tell you?

6    A.    She said there is some officers here looking

7          for you, an officer.

8    Q.    Did she mention the letters at that time?

9    A.    No.

10   Q.    So the police officer came to 177 to talk to

11         you, did he not?

12   A.    Yes.

13   Q.    Who brought up the subject of the letters,

14         you or he?

15   A.    I did.

16   Q.    Why did you bring up the subject of the

17         letters?

18   A.    I don't know.

19   Q.    What exactly did you tell the police officer

20         about the letters?

21   A.    I don't remember that.

22   Q.    I am sorry.

23   A.    I don't remember that.

24   Q.    As you sit here today, Mr. Teune, have you

25         been told orally or in writing by any law

75

1    problem is?

2    A.    In a short term, yes.

3    Q.    ~~The letters -- the letters when Tim moved~~

4    ~~out, he left the letter behind~~?

5    A.    ~~Yes.~~ DAME LIE - HOW WOULD HE KNOW HE DONT HAVE THESE!

6    Q.    He abandoned those letters?

7    A.    Yes.

8    Q.    You could have -- someone could have burned

9          them, thrown them out the window, done

10         anything they wanted with them?

11   A.    Yes.

12   BY MR. THOMPSON:

13         Pass.

14                RE-DIRECT EXAMINATION

15                       BY

16                NOAH HOLCOMB.

17   Q.    You're saying you didn't read these

18         letters?  You just read bits and pieces?

19   A.    Yes.

20   Q.    Why didn't you turn the letters over to Tim

21         instead of turning them over to the police?

22   A.    I don't know.

23   Q.    Do you remember reading this part of the one

24         letter, I just don't understand why Gary

25         would go and say that shit about me.  We had

                                                        89

some good times together. I trusted him.
~~He knows I had nothing to do with what they said I did~~ You remember reading that?

A. No.

Q. And do you recall reading the part in the
one letter, then I will start to sue the
cops for false arrest. And with Gary's
help, I will buy him whatever new car he
wants. Later, bro. Love you. You recall
reading that?

A. Yes, I do.

Q. You don't recall reading the part where he
says he knows I had nothing to do with what
they said I did? You don't remember reading
that?

A. No.

BY MR. HOLCOMB:

Nothing further.

### RE-CROSS EXAMINATION

### BY

### JAMES THOMPSON.

Q. Do you remember reading the one letter dated
1-6-2002 where David writes to Tim, if Gary
shows up in court --?

BY MR. HOLCOMB:

90

THESE LETTERS WERE STOLEN, OPENED,
read, AND turned OVER to Police Officer VanTanburg!

## EXIBIT

THESE ENVELOPES PROVES THAT MY
BROTHER WAS LIVING WITH HIS GIRLFRIEND
DEBRA ANAREAS,, AT HIS NEW ADDress!!









2893 N. MAID ST - XA442
CROWN POINT, IN 46307

Timothy James
1541 ABERDEEN ST
CHICAGO HTS, IL 60411

60411+3414 07

2893 N. MAD ST APA
CROWN POINT, IN 46307

Timothy UITSCH
1541 ABERDEEN ST
CHICAGO HTS, IL 60411

60411+3414

TAINTED
LETTER
DATES NOT SAME AS ERCOLI HANDWRITING

~~12/12/0~~

Dear Tim,

I miss you Man I hate this place! —
suicide always runs through my mind in
this place, they say if you can't do the
time don't do the crime. But it don't
work like that. We never plan to do
the crime, sometimes it just happens.
I should have told Gary to get them dam
bikes out of the garage; and to get rid
of them himself. But I was lasting
to make 500.°° a bike. never did get
payed for them, and look where I'm at,
and then, I'm getting blamed for taking
them! Well maybe he won't show up at
court. wishful thinking!! He's the only one that
could make things bad for me; unless I catch
him in one of his lies..

Tim what I need from you, is two things
that I can think of right now. I need
SQUIRAL's real "first and last name"? his Address,
plees, I may have to call Kenny's wife, "Christine"
as a witness. I need her address and last
name. Tim, this is very important.!! you are
all I got working out there for me. I helped

# EXIBIT

you to do this for me. I'll bet you never
talked to Tommy that goes to Bingo, for me
and court. did you? Kim, there trying to
put me over 16 years. So you must help
me out. I need you, like I do you.
to get that paper work straighten out
for you at Wartime. So help me out!!
And you gave Squirrel his letter? What
about Jennifer and Nancy?
I wish Gary would go on a long vacation
somewhere. Is he still going with Jacklyn
When you see Sue next door, tell her
I said that Gary was the one who
messed up her car with the dent and
broke out her window. just like him
stealing stuff out of her Dads house.
Did you ever go pick up what was on
the map?? Did you get the red car running
have you found a job yet? You should
ask Tim Smith if you can get a job
working with him on a garbage truck. It's
Union pay $26.00 hour!! I think Amy was
telling me. good money!! I sent you Tim's
phone # 748-3042, Joe Sendejas is 754-6679..
Cait think of much more to say. get that
information for me "names & addresses" Take care
and stay out of trouble. I need u out there.
Love yeah always Your one & only brother Dan

Dear Tim:                    Wednesday

    I'm sorry about that last letter I wrote. I've got to ask your forgiveness? But anyhow I still don't want you to come up and see me. Its better this way. then your not oblagated to coming up to see me. Hopefully I'll see you June or July. I was thinking you should get Gary to move in with you in that apartment. that way you can make sure he keeps his word and not show up at my court date. later bro →
          Ward Txo

P.S. Whats Garys address? I want to write Christina & Kenny.

"HAPPY NEW YEAR !!!

Dear Tim :      "EXIBIT 1"      12/27/01

NOT EVIDENCE

1-D

Dig, you need to get me "Squirls" real first and last name and his address so that I can soopena him to court. If Gary mentioned anything to him about Francis's dirt bikes of Harleys he needs to come to court and testify for me and I know he said something to you about it when he came up here to visit you with Tammy. I wish Tammy was still alive she'd testify." Have you gone to see her grave yet?? Is Jacklyn still going with that ass hole?? do you have any cop friends in the Heights? Id sure like to tell them some things Gary that done in our neighborhood. Do you know the cop that lives across the street at the corner corner house 16TH ST? He broke into his truck in stoled his radio, and the black van across from him. I caught him one day walking across 16TH ST with a tool box full of tools, power and all sort of stuff from that garage at 16TH ST Aberdeen off the alley. the same place were I got my VW from. I always preached to him not to shit in his backyard But he didnt care, the closer the better.

SENT MOTION FOR DIFFERENT COUNSEL JAN 2, 2002.

JUDGE DENIED IT FEB 21, 2002. HAD NOAH HOLCOMB ON A 5 POST CASE. HE DID NOTHING IN MY CASE. CONFLICT, ineffective.

So you better get up here to see me! I got your name on the visiting list. Dig, call this number and see if I still have credit on my card 1800·506-9511·-122115829 I shall... I should have 300 minutes. If I do. call that # 262·889-4885 ask for Jennette. Watch what you say, this is an older woman. tell her you my brother and I wanted for you to get her address. dont say to much about me. she use to be an X states attorney from Wisconsin.. get her last name to. I think its Larson.. what else! ≥ ≥ ≥ I wrote out a motion, hopfully to fire this P.D. I have. I cant stand this nigger, and thats what she is. "afermative action nigger", that didnt know the law.. I hope you found what I gave you on the map. I knew you would'nt find it. Bring the map with you if you still havent found it. "shit" the police probable have it by just what I've said over the phone. you are a jerk at times I swear.. that girl thats living in my trailer has only 6 weeks to 6 months to live. I need to rent it out once she kicks because it will go to hell if I dont. I wish I could get hold of Debbie, shes got a block on her phone. I need to talk to Redbeard to.. Do you know Danny Rencher, Robins friend who works for ACT?? He lives in K.K.K. Well Im out of here.. You take care & stay out of trouble. find a job. later love you David

DIDNT ALLOW THESE AS EVIDENCE

EXiBiT 2

Dear Tim:                                    1-6-2002

Man, It was really nice getting a visit, thanks for coming up, and thanks for the $40.00 bucks. I just wish it was $5,000. they won't lower my bond. So I guess I can gwe up on you. You never was a go getter like me! you was like Billy! Make a couple hundred and quits thats why it was easy for me to bond everyone out. Because I didn't know how to quite untcl the job was done and I had enough to get us out. But the way I look at it. I failed you, If I didn't made to work with ass hole, I wouldn't be here. But just the same I had to. I tried to get a place for you, me, timbos and david jr.. We would have had our own place. It would have been the shit to. We probable would af all had our own bikes to, all 4 of us.. wouldn't that have been the shit? If gary shows up at court they will find me guilty. Because I've got Antioch P.D. helping Indiana to convict ME. It don't look good.. they'll file the bitch on me, I'm sure of that. If I'm found guilty. that means my probation is violated. Man, I wish you could get me out. We could work and get the money back. It wouldn't take us

EXIBIT (1C)

long to get the money back of someone was
to loan it to you. fuck it, whats the use..
You cant do shit without a partner, well
thats what you've been telling me.. the truth
is thats to much money to put up for me,
you'd reather keep that kind of money for
yourself even if you did have it.
    one thing I'm happy about. they
have you dropping. that means atleast you
cant do no coke. I thank god for that.
How long do you have to do that??
    Dig, if you aint visit me this week. go
to Boos this friday and I'll try calling at
5 or 6 OK. Dig, can you call Judge Stefaniak
and ask him if he received my <u>motion for
substitution of counsel</u>, for ANOTHER ATTORNEY??
I SENT it out JAN 1st. LAST time I did this
the CLERK NEVER GAVE THE JUDGE MY MOTION..
TELL HIM ALSO, THAT I WANT A FAST & SPEEDY TRIAL
I HAVEN'T yet SEEN ANYONE About my CASE. IVE
BEEN locked up ON THESE charges SINCE Aug 16,
demanding trial. TIM, that phone call would be
important. If you CAN'T get me out. I'd reather
be found guilty AND go to the joint with 30
YEARS. YOU TAKE CARE.
                    Your brother David.
                              XO XO
    I LOVE YEA TIM.
                GOD BLESS YOU!!
P.S. TIM who does this look like ??

DIDN'T ALLOW THESE
B EVIDENCE

Dear Tim:                          2-11-2002

Whats up bro? Not much happening
with me. Its Saturday Night and everything
all right (smile) this place sucks on Sat
alls they watch on T.V. is sports and
rap vidios... I hate that shit! ☺
So I wonder what you're doing
tonight? What would I be doing tonight
I'd either be at TEZZERS or JOE or doing
Kareokee @ at Captain Curts out in univer-
sity park. Man, I miss them times! I
use to have alot of fun singing with
Jacklyn & Gary & Kenny his brother & Christ
Kenny wife. Tim, I just don't under-
stand why Gary would go and say this
shit about me. We had some good tim
together. I trusted him. His knows I
had nothing to do with what they
said I did. I know what happened
they scared the shit out of him when
they had him alone. We both know
how they can do that!! But it takes
a real man to see through their trick
and lies. they probable told him he'd
never see Jacklyn again and I know
how much he loves her.!!! I could
have said a couple things to Jacklyn, bo

he told me not to, and I never did. Because I keep my word, and your word is the only thing you got in this life. The Bible says the best friend you can have is for him to lay down his life for yeah. I did for Gary because I've never said nothing against him even though Tammy wanted me to. I never snitched him out. I realize the police probable told him I said something on him. never did

Gary's really not a bad kid.. He's been brought up wrong.. His own mom rattel him out.

Tim you need to talk to Gary, let him no I don't hate him because of what he said. I know how cops can scare you into admitting what "they say". They no doubt, pressured him into saying what he said. I believe that!!

I just miss the good times of singing up there with him and his brother & Christine and Jacko!! ☺ talk to him Tim, and ask him not to come to court and testify.. they cant make him do shit. If they threaten him in any way, like they are going to bring charges against him for obstruction justice. they can't!! they tried that with me but couldn't make it stick.

what would really help and he won't have to come to court. Is for him to make a statement (write a statement) go to the currance exchange and him him get it nottized and send it to me. the'll have to let me out. then I'll start to sue the cops for false arrest and with Gary help, I buy him what ever new car he wants. later bro love ya
AND THATS MY WORD, WHAT EVER HE WANTS!!! DAVID xo

THANKS TIM:                        Visiting Night !!

Well its Tussday night visiting
AND AGAIN YOUR NOT HERE LIKE you
promised you would be... Tim your A
Big disapointment to me. My word
MEANS something to me. I did every-
thing you asked ME WHEN you WAS dow
I should have never gotten my hopes up
to see you. I WAS hurt, because Now
I don't believe Anything you told ME over
the phone About Gary. So Im thinking
that maybe I should rely on God inste
OF you, AND take A plea OF 10 years.
Hopefully I'll be DEAD BY THEN AND
I WON'T HAVE TO SEE your Lying FACE
AGAIN. HOWS THE VODKA TIM?? You LIKE
THAT BOTTLE DON'T you?? MORE THEN
YOUR OWN FLESH AND BLOOD? WELL IT
BOTHERS ME, THAT you PUT IT FIRST, IN-
STEAD OF ME. I'LL BET you'VE SEEN
GORDENS VODKA EVERYDAY AND NIGHT SINCE
YOU'VE BEEN OUT. AND you'VE SEEN ME
"ONCE". SO WHO DO you LOVE MORE?? FUCK
IT! You'VE BECOME WEAK JUST LIKE JAY
DENNIS, KURT, FUCK IT ALL OF THEM. I
THOUGHT you AND I WERE ALIKE. BUT you'VE
CHANGED SINCE JOYCE DIVORCED you. You LOST

YOUR NERVE TO GET THINGS DONE. I WOULD'NT BE
HERE IF YOU HAD'NT ASKED ME HELP YOU OUT. OR
MAYBE YOU DIDN'T ASK ME. I KNEW YOU NEEDED
A PLACE TO GO AND I WAS WORKING ON IT. NOW
I FACE POSSIBLE THE REST OF MY LIFE IN HERE. BUT
THATS OK, I'M STRONG I CAN HANDLE IT. I GUESS I
EXPECTED TO MUCH OUT OF MY LITTLE BROTHER.

Tim: DON'T DRIVE UP HERE TO SEE ME. I'M NOT
PUTTING YOUR NAME ON THE SLIP ANYLONGER..THAT
WAY I WON'T BE LIED TO, OR LET DOWN BY YOU.
I SHOULD HAVE REALIZED THAT VODKA PLAYS NUM-
BER I IN YOUR LIFE. I MEAN NOTHING TO YOU !!
COOL I CAN DEAL WITH THAT.

ONE GOOD THING ABOUT YOUR BIG BROTHER, HE
KNOWS HOW TO KEEP HIS WORD. I HELPED GET
THAT HOLD OFF YOU. I CAME ALL THE WAY UP
TO FUCKEN PENALTON TO SEE YOU, BECAUSE I
CARED AND you NEEDED ME!!!!

THANKS FOR YOU BEING HERE FOR ME .. I'LL
BET IF I HAD MONEY OF A FREE HIGH, YOU'D BE
HERE. I CAN'T BELIEVE YOU'D DO THIS TO ME.
I'M UPSET AND HURT BECAUSE OF YOU DISAPOIN
ING ME. BUT YOU DON'T GIVE TO SHITS.

    FUCK IT.

        DON'T BOTHER COMEING UP HERE, YOUR
SELFISH AND ALLS YOU THINK ABOUT IS YOURSELF.

THANKS FOR THE LETTERS, PICTURES, CARDS AND EVERY
THINGS ELSE YOU FAIL AS A BLOOD BROTHER.

P.S AND WHEN I CALL BOB'S PLEASE DON'T GET ON THE
PHONE TRYING TO EXPLAIN LIES. I'LL HANG UP !!!

OPENED AND READ AND DELIVERED SOME 6 OF THESE
LETTERS TO VANDENBURGH TO BE USED IN A INCRIMINATING
MANNER AGAINST ERCOLI IN HIS CRIMINAL TRIAL ON THE
THEFT OF THE TWO MOTOR CYCLES IN QUESTION AND THAT
THESE ACTIONS DID CAUSE ERCOLI DETRIMENT AND HARM.
SEE: ATTACHED EXIBITS (1)(2)(3)(4)(5)(6) PAGES & ENVELOPE., *

AND THESE COMBINED CONSPIRATORY ACTIONS DID VIOLATE
ERCOLI'S CIVIL RIGHTS UNDER THE 1st AMENDMENT
RIGHT TO MARSHAL FACTS AND PETITION FOR REDRESS
WITHOUT THREAT OF RETALIATORY ACTIONS FOR REMAINING
SILENT. THE 4TH AMENDMENT RIGHT TO BE FREE IN HIS
PERSON AND PROPERTY FROM ALL ILLEGAL SEARCHS AND
SEIZURES, AND HIS 14TH AMENDMENT RIGHT UNDER
THE SUBSTANTIVE DUE PROCESS CLAUSE PERTAINING
TO CERTAIN ACTIONS THE GOVERNMENT MAY NOT ENGAGE
IN NO MATTER HOW THEY MAY TRY TO JUSTIFY IT, ESPECIALLY
WHERE SAID CONDUCT SHOCKS THE CONCIOUS OF THE
PUBLIC...

SEE: ROCKIN VS CALIFORNIA, 342 U.S. 165 (1952). AND
THESE COMBINED ACTIONS GIVE RISE TO THE CLAIMS
NOW BEFORE THIS HONORABLE COURT.,

FORTH CAUSE: AGAINST DEFENDANT, PUBLIC DEFENDER
NOAH L. HOLCOMB JR. WHO CONSPIRED
WITH THE DEFENDANTS PAIVA, RAINEY, MARION AND
TEUNIS AND VANDENBURGH AND PROSECUTING ATTORNEY
JAMES THOMPSON TO ASIST THEM IN SUBMITTING
THE STOLEN LETTERS IN ERCOLI'S CRIMINAL TRIAL ON
THE THEFT OF THE TWO MOTOR CYCLES, INTO EVIDENCE.,
HOLCOMB REFUSED TO ARGUE TO SUPPRESS THE LETTERS
THAT WERE STOLEN EVEN IN THE LIGHT OF POLICE,
NARRATIVE, REPORT OF MARCH 5th 2002 FROM ———
DEFENDANT VANDENBURGH COACHING DEFENDANT TEUNIS

TO STEAL MORE OF ERCOLI'S LETTERS DIRECTED TO HIS BROTHER TIMOTHY ULTSCH'S NEW ADDRESS WHERE HE LIVED WITH HIS FORMER GIRLFRIEND. TEUNE STATES HE WILL ATTEMPT TO LOCATE "STEAL" FOR EVIDENCE. **SEE: ATTACHED EXIBIT SUPPLEMENT NARRATIVE** ON MARCH 5, 2002 - REPORT BY DETECTIVE SGT VANDENBURGH.

HOLCOMB USED TRICKERY AND MANIPULATION AND OTHER UNETHICAL PRACTICES TO SUPPRESS ERCOLI'S COMPLAINTS CONCERNING THE SUBMISSION OF THE STOLEN LETTERS, AND ALSO THE COMPUTER PAGER FOUND IN ERCOLI'S CAR. THE EVIDENCE WAS ALLOWED IN ERCOLI'S CRIMINAL TRIAL, AND ALSO, ERCOLI FILEING A MOTION TO THE COURT FOR "SUPPRESSION OF EVIDENCE" SEE: EXIBIT 1 thru 3 of "Motion Suppression of Evidence" 5-2002 MR. HOLCOMB JR. BLOCKED SAID MOTION, JUDGE; THOMAS P. STEFANIAK JR. INQUIRED INTO A EVIDENTIARY HEARING, MR. HOLCOMB RESPONDED, THERES NO NEED FOR A EVIDENTIARY HEARING. AND THESE ACTIONS BY HOLCOMB WERE IN RETALIATION AGAINST ERCOLI, FOR ERCOLI'S VERBAL AND WRITTEN COMPLAINTS AGAINST HOLCOMB AND ERCOLI'S ATTEMPTS TO FIRE HOLCOMB IN THE PRESENT CASE AS WELL AS IN A PRIOR CASE STATE VS ERCOLI 45G04-9409-CF-0024 SUPERIOR COURT, CROWN POINT, INDIANA ON THE DATE OF MARCH OR APRIL 20, 1995 WHERE HOLCOMB COMPLAINS THAT SINCE ERCOLI CALLED HIM A NIGGER, HE WOULD ACT LIKE A NIGGER IN COURT, AND TRUE TO HIS THREATS AND OVER ERCOLI'S OBJECTIONS, HOLCOMB ASSISTED THE DEFENDANTS IN ASSURING that THE STOLEN LETTERS WOULD BE ADMITTED INTO EVIDENCE AT ERCOLI'S TRIAL AND THESE RETALIATORY CONSPIARCY ACTIONS did CAUSE ERCOLI DETRIMENT AND HARM GIVING RISE TO THIS CIVIL RIGHTS CLAIMS UNDER 1ST, 4TH AND 14TH AMENDMENT RIGHTS OF THE

March 4, 2002 I located the witness, Gary Teune staying with friends
177 E 25th St in Chicago Heights. Teune stated he knew about the up
ming trial. Teune stated he felt threatened and afraid
cause the defendants brother Timothy Ultsch has been telling him not
appear for court. Since the date of the arrest Ultsch was released
om prison and works with Teune at a junk yard. Teune also showed me
o letters alledgedly wrote by David Ercoli and sent to Ultsch. The
tters give instruction to have Teune not appear in court and that he
ll buy Teune whatever he wants if he does not appear for the trial.
e letters are post marked from Gary, Indiana with the return address
the Lake County Jail and are signed "David". Teune stated there were
re letters with threats and promises about appearing in court and
at they were left in possession of Ultsch's former girlfriend. Teune
ated he will attempt to locate them for evidence. **STEAL THEM, LIKE THE OTHERS!**

e to the trial being on March 11, 2002 I immediatly notified
osecutor James Thompson who requested the original copy of the
tters for evidence. I took them to Thompson on this date.

also spoke with Willie Paiva who rented a room to Ercoli and Teune
ring the date of the thefts. Paiva confirmed information that I had
ceived about the vehicles in August. As far as Paiva knew both the
maro and the Ford van were known to him as Ercoli's vehicles although
did not know who they were officially registered to.

te 3/5/02   Time 9:01am   Reporting Officer Det/Sgt VanDenburgh
.34

*I KNEW DAMNE WELL IF I HAD HOLOMB
AS A LAWYER I'd GET SCREWED FOR CALLING
HIM A NIGGER...I WOULD HAVE PROMISED GARY
THE MOON TO NOT COME TO COURT.*

"YOUR HONORABLE JUDGE, THOMAS P. STEFANIAK. JR.

Exibit" I-3     (SUPPRESSION OF EVIDENCE)  5-20-02
                                          5-22-02

N OR ABOUT AUGUST 16, 2001. I DAVID D. ERCOLI WAS detained
Y LYNNWOOD POLICE, LYNNWOOD ILLINOIS ON A CHARGE OF
~~OBSTRUCTION OF JUSTICE~~, BECAUSE OF, "ME NOT MAKING OR
IGNINS A STATEMENT," AND ALSO, A CHARGE OF ~~POSSESSION~~
~~E STOLEN Goods~~, THE SEARCH AND SEIZURE OF PERSONAL
ROPERTY FROM MY APARTMENT AND VEHICLE WAS illegal.
YNNWOOD POLICE VIOLATED MY CONSTITUTIONAL Rights AND
ENIED ME, MY DUE PROCESS OF THE LAW. I demanded
IAL ON BOTH CHARGES. THE STATE OF ILLINOIS, "MARKHAM COURT
.O.L. BOTH OF THE CHARGES." I WAS denied MY right TO
E HEARD BY A JURY OF MY PEERS.
Y NIECE, MS. NANCY MAGRUDER informed ME THAT LYNN-
OOD POLICE HAD BROKEN MY APARTMENT DOOR, ENTERINS TAKING
NO BAGS "GARBAGE BAGS" OF PERSONAL PROPERTY. I did
OT GIVE ANYONE PERMISSION TO ENTER, SEARCH OR
IZE MY PROPERTY FROM MY RENTED ROOM. THE SEARCH
AS ILLEGAL NO WARRENT WAS ISSUED. I NEVER RECEIVED A
PY OF A WARRENT. MY VEHICLE WAS SEARCHED ILLEGALLY.
GARY TENUE WHILE detained BY LYNNWOOD POLICE, INFORMED
E SGT IN CHARGE TO LOOK UNDER THE HOOD OF MY VEHICLE
                      CHARGE
R TOOLS, THE OFFICER IN ASKED THE TWO OFFICERS. WHILE SEARCH-
S THE CAR, "MAKE SURE YOU SEARCH UNDER THE HOOD FOR
OLS" THEN ~~SMILED AT ME~~. THE SEARCH WAS INVESTASATIVE. THEY
D ME IN LOCKUP 2 day OR MORE... THERE WAS NO MOTIONS

MADE AS TO THE illegal SEARCH AND SEIZURE OF my APARTMENT AND VEHICLE. I BELIEVE that the STATES ATTORNEY OFFICE OF INDIANA INTENDS to USE EVIDENCE illegally SEIZED FROM My APARTMENT AND CAR. I BELIEVE that the ILLINOIS STATES ATTORNEY OFFICE OF MARKHAM, ILLINOIS COULDN'T obtain A CONVICTION because LYNNWOOD POLICE ABUSED their AUTHORITY. My VEHICLE WAS NOT pulled OVER FOR A TRAFFIC INFRACTION. I BROKE NO LAWS. LYNNWOOD POLICE ~~TOWED~~ MY VEHICLE. IT WAS "~~PARKED AND LOCKED~~" MY VEHICLE WAS NOT ABANDON. THE OPENNING OF My VEHICLE WAS Without A SEARCH WARRENT. LYNNWOOD POLICE SEIZED MY PERSONAL IDENTIFICATION, MY ILLINOIS I.D. PICTURE. WHICH MAKES ME WONDER, what USE" would THEY WANT MY IDENTIFICATION FOR??

YOUR HONOR, ~~ISN'T~~ it AGAINST the LAW to STEAL OR TEMPER with the (U.S. MAIL)?? LETTERS I HAD written My BROTHER TIMOTHY ULTSCH BEFORE AND AFTER he had MOVED WERE received by MS. JENNIFER RAINEY AND GIVEN to her SISTER JACQUELINE RAINEY INTURN GIVEN to HER boyFRIEND MR. GARY TENUE. MR. TIMOTHY ULTSCH HAD LIVED with JENNIFER RAINEY IN her HOME 1541 ABERDEEN ST, CHICAGO HTS, ILL RENTING A ROOM AS SAME AS I WAS. THESE 3 INDIVIDUALS CONSPIRED together AND TURNED THESE (STOLEN LETTERS) OVER PROSECUTING ATTORNEY JAMES THOMPSON. I WASN'T AWARE MY BROTHER MOVING ~~NOR WAS THE POSTMAN. THESE~~ LETTERS SHOULD HAVE BEEN "(RETURNED TO SENDER.)" YOUR HONOR, COULD YOU PLEASE ORDER THE STATES ATTORNEY JAMES THOMPSON TO GIVE ME A COPY OF ALL THESE LETTERS RECEIVED FROM MR. GARY TENUE. I NEED THEM

OR MY APPEAL. I KNOW NOTHING ABOUT LAW OR HOW TO MOTION
THE COURTS. BUT THE PERSON WHO JUST LEFT HERE WAS A PAR-
LEGAL IN CIVIL LAW.. HE STATED TO ME THAT I SHOULD
ATLEAST WRITE YOU AS TO WHAT HAPPENED IN LYNNWOOD,
ILLINOIS. HE STATED THAT LYNNWOOD POLICE DID INFACT
VIOLATED MY CONSTITUTIONAL RIGHTS AND ALSO DENIED ME
MY DUE PROCESS OF THE LAW. I WAS ARRESTED FOR THE
ORIGINAL CHARGE OF ~~POSSESSION OF STOLEN GOODS,~~" A ALLEGED
STOLEN COMPUTER PAGER FOUND IN MY VEHICLE. I DEMANDED
TRIAL ON BOTH CHARGES. THE STATES ATTORNEY OFFICE OF ILLINOIS
LONG WITH LYNNWOOD POLICE DEPARTMENT S.O.L. BOTH OF
THE CHARGES. ~~THEY DROPPED THE CHARGES.~~ I WAS AS I UNDER-
STAND IT ILLEGALLY ARRESTED.

I'M HAPPY WITH MR. HOLCOMB, HE SEEMS TO SPEAK WELL WHEN
I DO SEE HIM. HE ADVISED ME 5-10-2002 THAT HE WAS
GOING TO DEPOSITION THE HARLEY OWNERS, AND ALSO, SEND
AN INVESTIGATOR OUT TO TAKE SOME PICTURES I ONLY
WISHED THIS WAS DONE BEFORE THE READING OF THE
LETTERS, THE MIS-TRIAL AND THE MORE SEVERE SENTENCE
BROUGHT AGAINST ME.

THANK YOU FOR YOUR TIME IN THIS MATTER.
Respectfully, David Ercole.

39 Stat. 162; July 28, 1916, ch. 261, § 1, 39 Stat. 418; May 7, 1934, ch. 220, § 1, 48 Stat. 667).

Words "or shall willfully take or steal such mail from or out of such letter box or other receptacle" were omitted as covered by section 1702 of this title. Prosecutions for theft of mail matter are invariably made under that section whereas this section is used as basis for prosecutions for malicious mischief to mail boxes or receptacles. By Postal Regulations (1932), section 700, paragraph 2, an ordinary letter box is within this section of this title. *Huebner v. United States* (C.C.A. Ill.) 128 F.2d 529).

Reference to persons aiding or aiding was omitted. Such persons are principals under definitive section 2 of this title.

Minor changes were made in phraseology.

### 1949 Act

As amended by this section [section 38] of the bill, section 1706 of title 18, U.S.C., is brought more closely to conformity with the original statute from which it was derived by eliminating an inadvertent reference to a "conveyance" which was not in the original statute. (See Sen.Rept.No.133, 81st Cong.)

### § 1706. Injury to mail bags

Whoever tears, cuts, or otherwise injures any mail bag, pouch, or other thing used or designed for use in the conveyance of the mail, or draws or breaks any staple or loosens any part of any lock, chain, or strap attached thereto, with intent to rob or steal any such mail, or to render the same insecure, shall be fined not more than $1,000 or imprisoned not more than three years, or both.

### REVISION NOTES

Based on title 18, U.S.C., 1940 ed., § 312 (Mar. 4, 1909, ch. 321, § 189, 35 Stat. 1124).

A fine of "$1,000" was substituted for "$500," thus raising the maximum to correspond with other comparable sections. (See section 1705 of this title.)

Minor verbal changes were made.

### § 1707. Theft of property used by Postal Service

Whoever steals, purloins, or embezzles any property used by the Postal Service, or appropriates any such property to his own or any other than its proper use, or conveys away any such property to any use, or detriment of the public service, shall be fined not more than $1,000 or imprisoned not more than three years, or both; but if the value of such property does not exceed $100, he shall be fined not more than $500 or imprisoned not more than one year, or both.

(As amended Aug. 12, 1970, Pub.L. 91-375, § 6(j)(18), 84 Stat. 778.)

### REVISION NOTES

Based on title 18, U.S.C., 1940 ed., § 313 (Mar. 4, 1909, ch. 321, § 190, 35 Stat. 1124).

The phrase "used by" was substituted for "in use by or belonging to" in order to limit the application of the section to property used by the Post Office Department. Theft of public property belonging to governmental departments is covered by section 641 of this title.

A fine of "$1,000" was substituted for "$200," thus increasing the maximum to conform with other comparable sections. (See section 1705 of this title.)

The smaller penalty for an offense involving property valued at $100 or less was added. (See reviser's notes under sections 641 and 645 of this title.)

Minor changes in phraseology were made.

### § 1708. Theft or receipt of stolen mail matter generally

Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted —

Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

(As amended May 24, 1949, c. 139, § 39, 63 Stat. 95; July 1, 1952, c. 535, 66 Stat. 314.)

### REVISION NOTES
### 1948 Act

Based on title 18, U.S.C., 1940 ed., §§ 317, 321 (Mar. 4, 1909, ch. 321, §§ 194, 198, 35 Stat. 1125, 1126; May 18, 1916, ch. 126, § 10, 39 Stat. 182; July 28, 1916, ch. 261, § 1, 39 Stat. 418; Feb. 25, 1925, ch. 318, 43 Stat. 977; May 7, 1934, ch. 220, § 1, 48 Stat. 667; Aug. 20, 1935, ch. 663, 49 Stat. 867; Aug. 7, 1939, ch. 557, 53 Stat. 1266).

*EXIBIT*

## OFFICE OF THE PUBLIC DEFENDER

August 7, 2002

*Received August 13TH*

DAVID ERCOLI
XA 442 LAKE COUNTY JAIL

FROM: NOAH L. HOLCOMB, JR.

In response to your latest letter:

The state has indicated by motion that it will try to introduce your letters against you in their case in chief. ~~I will try to prevent that, by saying that the letters were stolen from your constructive possession without your consent and/or knowledge.~~ Further, the state will try to have your booking card introduced into evidence, for the jury to compare your signature there with the letters, to reach a conclusion that you wrote the letters.

Of course, you have given the state much to convict you, with the letters and motions that you wrote to the judge trying to have me taken off your case. Those letters and motions can be used and compared with the letters to your brother, if the judge rules that they were written by you.

Finally, I have not reached any conclusion of your guilt or non-guilt. I have obviously reached a conclusion that Gary and that officer from Lynwood are lying through their teeth, when they say that there was no deal. See my last letter to you about the fact that Gary is listed as a witness only, and not as a possible suspect. Please have clean civilian clothing for the trial.

Noah L. Holcomb, Jr.

*~~HOLCOMB~~ NEVER brought up ~~THE FACT THE LETTERS WERE~~ ~~STOLEN~~!!*

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE LAKE SUPERIOR COURT |
| | ) SS: | CRIMINAL DIVISION |
| COUNTY OF LAKE | ) | ROOM FOUR |

JUDGE THOMAS P. STEFANIAK, JR.
PRESIDING JUDGE

| | |
|---|---|
| STATE OF INDIANA )| |
| )| |
| )| |
| VS )| CAUSE NO. 45G04-0108-CF-00181 |
| )| |
| )| |
| DAVID ERCOLI )| |

**Filed in Open Court**

AUG 0 7 2002

Anna N. Anton
CLERK LAKE SUPERIOR COURT

### MOTION IN LIMINE

Comes now Defendant by counsel Noah L. Holcomb, Jr., and moves the Court for a grant of

motion in limine to prohibit the state as follows:

1. The trial of this cause is set for August 12, 2002.

2. The state of Indiana has indicated informally that it intends to state in opening argument that

   certain letters alleged by the state to have been written by the defendant will be introduced

   into evidence, and that the state will also state the content of the letters. The content of the

   letters is highly prejudicial to the defendant and in fact may border on confessions. There

   have been no witnesses listed by the state who can authenticate said letters, nor has the state

   sought to have them analyzed by a handwriting expert.

3. The state has indicated informally that it will introduce the defendant's booking card into

   evidence, and seek to have the jury compare the booking card signature of the defendant with

   the letters, in an attempt to have the jury fill the function of a handwriting expert.

4. The defendant believes that the state will mention in opening argument that the defendant

   has already been convicted of auto theft, thus depriving the defendant of his right to a

bifurcated trial, per the statute.

WHEREFORE, defendant moves for motions in limine as follows:

1.  An order prohibiting the state from mentioning in opening argument, by way of questioning of witnesses, or in any other manner the letters referred to in paragraph 2 above.

2.  An order prohibiting the state from mentioning in opening argument, by way of questioning of witnesses, or in any other manner the fact that the defendant signed a booking card, and to prohibit the state from even calling a witness in an attempt to have the booking card introduced into evidence.

3.  An order prohibiting the state from mentioning in opening argument, by way of questioning witnesses, or in any other manner the fact that the defendant has previously been convicted of auto theft, at least until and IF the jury reaches a guilty verdict on the first phase.

Respectfully submitted,

Noah L. Holcomb, Jr.
Counsel for Defendant

**Filed in Open Court**

AUG 07 2002

*Anna N. Anton*
CLERK LAKE SUPERIOR COURT

IF HOLCOMB WOULD HAVE ALLOWED MY MOTION FOR "SUPPRESSION OF EVIDENCE", THE TRUTH WOULD HAVE CAME OUT THAT THEY WERE STOLEN, AND THIS SIDE TRACK MOTION THAT HE MADE IS ~~XXXXXX~~ GARBAGE..

# IN THE
# INDIANA COURT OF APPEALS

## APPELLATE CAUSE NO.

DAVID DOUGLAS ERCOLI )      Appeal from the Superior
                       )      Court of Lake County
    Appellant, )      Criminal Division, Rm. IV
    v.         )
                       )      Trial Court Cause No.
STATE OF INDIANA,      )      45G04-0108-CF-00181
    Appellee. )
                       )      Thomas P. Stefaniak, Jr.
                       )      Presiding Judge

---

## VOLUME   I   Of   II
### Pages 1 through 250

## TRIAL  BY  JURY

---

BE IT REMEMBERED, that heretofore on the 12th day of August,, 2002, the

above-entitled cause came on for TRIAL BY JURY before the Honorable THOMAS P.

STEFANIAK, JR., Judge of the Superior Court of Lake County, Criminal Division, Room, IV,

Crown Point, Indiana.

## APPEARANCES:

<table>
<tr><td>James Thompson</td><td>Noah L. Holcomb</td></tr>
<tr><td>Deputy Prosecuting Attorneys</td><td>Public Defender</td></tr>
<tr><td>For the State of Indiana</td><td>Representing the defendant</td></tr>
<tr><td>2293 N. Main St.</td><td>2293 N. Main St.</td></tr>
<tr><td>Crown Point, IN 46307</td><td>Crown Point, IN 46307</td></tr>
</table>

*(handwritten left margin, vertical)* ...FOR MY ILLEGAL ...ST IN LYNWOOD, IL ...ATINOIS ON AUGUST 16 2001

*(handwritten left margin, vertical lower)* POSSESSION OF A STOLEN COMPUTER PAPER THEY OBSTRUCTION OF JUSTICE Aug 16 2001

1   I object to the form of the question,

2   it's a wide opened question and can lead to

3   ~~all kinds of inadmissible evidence~~ at this

4   point. It can make my client's prior record.

5   BY MR.THOMPSON:

6        He has been told. — *(handwritten)* SOUNDS LIKE CONSPIRACY TO ME.

7   BY MR. HOLCOMB:

8        I'm not sure of that.

9   THE COURT:

10       How do you propose to handle it?   Let

11   him lead him.

12   BY MR. HOLCOMB:

13       No objection to that at all, Your

14   Honor.

15   THE COURT:

16       Mr. Thompson?

17   BY MR. THOMPSON:

18       All right.

19   BY MR. HOLCOMB:   *(handwritten)* I SET IN COOK COUNTY JAIL FROM Aug 11, 2001 to DEC 7, 2001

20   ~~Also, my client was never charged with~~

21   ~~any kind of offense in Lynwood, he was in~~   *(handwritten)* SAME LIE!

22   ~~for questioning but never formally charged~~   *(handwritten)* AND I TOLD HIM I WAS

23   ~~with anything. What I'm going to do is~~   *(handwritten)* ARRESTED!

24   ~~object to the fact that my client was~~

25   ~~arrested for some kind of possession of~~

*(handwritten)* I HAVE ALL THE PAPER WORK ↑

103

```
8-30-2001          CIMIS Inmate Case Inquiry Menu           8:16am

Last CIMIS # Status Stat Date  Housing Stat  Date      ID:
2001-0064512  BOOK  8-18-2001 IN JAIL       8-18-2001
```

```
Inq    CIMIS #:2001-0064512      Disch Date How        Date/Birth Age
Reqst                                  -    -           1-09-1950 51
Name:ERCOLI, DAVID D
```

```
Adjusted Rel Date:  -    -
                                 Sentence Status:NONE   0 Years   0 Days
                                      Bail Amount:       6,000.00

                ***** Bond ******
Doc Number          Type    Amount Actn Branch        Most Serious Charge
 M  016017523-01 DB      10,000.00 PEND MARKHAM      RESIST/OBSTRUCT PO
 W  01-142353    CS       5,000.00 PEND BRANCH 98    FUGITIVE WARRANT
```

POSSESSION OF STOLEN GOOD I WAS CHARGED FOR TOO!

```
Alt=========================================================Num=
Press Enter to view detail case information.

1Prev  2Next  3Charges           6InqMenu       8MainMen      0DoAnthr
                                           Transfer complete.
```

```
8-30-2001          CIMIS  Pending Events Inquiry            8:17am

CIMIS #:  2001-0064512     ID:              Status: BOOK  8-18-2001
   Name: ERCOLI, DAVID D

   Pri Type  Official           Destination      Comments   Date      D/N

 1. 01 COURT                    MARKHAM          M016017523  9-18-2001 D
 2. 01 COURT                    BRANCH 98        W01-142353  9-26-2001 D
```

```
*WARNING: Inmate has no more pending events.
```

COOK COUNTY JAIL

```
Alt=========================================================Num=
Press the ENTER key to continue.

1Prev  2Next                              8Restart        0Exit
```

# NWOOD POLICE DEPARTMENT
## GENERAL CASE REPORT   *Exibit*

LRN#

CAD #

**Classified As**
POSSESSION OF BURGLARY TOOLS

**Address of Occurrence**
GLENWOOD DYER RD AND TORRENCE AVE

**Name of Business / Location**

| Date Reported | Time Reported | Occurred ( ) On ( ) Between Date | Time Occurred |
|---|---|---|---|
| 8-16-01 | | 8-16-01 | |

### V=Victim C=Complainant W=Witness

| Code | Name | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|
| C | SGT D TATGENHORST | M | W | | |

**Address, City, State, Zip**
21460 LINCOLN HWY LYNWOOD IL

Home Phone

Work Phone
758-6100

| Code | Name | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|
| | | | | | |

**Address, City, State, Zip**

Home Phone

Work Phone

| Code | Name | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|
| | | | | | |

**Address, City, State, Zip**

Home Phone

Work Phone

### O=Offender S=Suspect (if name is unknown, describe offender in detail)

| Code | Name | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|
| O | TEUNE,GARY J | M | W | 5-22-78 | 356-3466-3726 |

**Address, City, State, Zip**
1541 ABERDEEN CHICAGO HEIGHTS IL 60411

Home Phone

Work Phone

| Hair Color | Eye Color | Height | Weight | Scars, Marks, Tattoos | Arrest # |
|---|---|---|---|---|---|
| BLONDE | BLUE | 5'09" VA right | 150 | | 12-295 |

*WRONG NUMBER*

| Code | Name | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|
| S | ERCOLI,DAVID D | M | W | 01-09-50 | 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 |

**Address, City, State, Zip**
1541 ABERDEEN CHICAGO HEIGHTS IL 60411

Home Phone

Work Phone

| Hair Color | Eye Color | Height | Weight | Scars, Marks, Tattoos | Arrest # |
|---|---|---|---|---|---|
| RED/BRO | GREEN | 507 NO! | 245 NO! | TAT BOTH FOREARMS | 12-296 |

### O=Offender S=Suspect V=Victim

| Code | Year | Make | Model | Style | Color | License | ST | Mon | Yr |
|---|---|---|---|---|---|---|---|---|---|
| O | 82 | CHEVY | CAMARO | 2DR | BLUE | 540ATM | WI | | 01 |
| Code | Year | Make | Model | style | Color | License | ST | Mon | Yr |

| Date Arrived | Time | Date Completed | Time | Supervisor Approving | | EVENT# | LRN# |
|---|---|---|---|---|---|---|---|
| 8-16-01 | 0205 | 08-16-01 | 0830 | | | | |

| Officer's Name [PRINT] | Star | Officer's Name [PRINT] | Star | Supervisor Signature |
|---|---|---|---|---|
| SGT DENIS TATGENHORST | 193 | | | |

| Signature | | Signature | | Date |
|---|---|---|---|---|
| | 193 | | | |

LPD #1 (VAII)

September 24, 2001

*THIS IS THE CHARGE I HAD AT MARKUM COURT HOUSE FROM LYNWOOD POLICE, CHARGES WHICH MY P.D. IN INDIANA SAID, I WAS NEVER CHARGED WITH ANYTHING LOCK AT TRIAL TRANSCRIPN PAGE 103-104*

Mr. David Ercoli
#0064512
Box 089002 Div.-B1
Chicago, IL 60608

Dear Mr. Ercoli:

I am in receipt of your letter dated September 19, 2001, and with respect to your concerns this is how I normally handle matters such as these:

On the day that your case was in court we got the bond reduced to an "I" bond and it was given what's called a Motion State date for October 22, 2001 with our demand for trial. The reason this was done was because that would force the state to proceed within a specified period of time or the case would be forced into dismissal.

We have also subpoenaed the police and inventory reports that we didn't have so that we will have them before the next court date. Once I look at the police report I will determine whether or not we should proceed by way of a Motion to Quash the arrest, or the trial which we are already set for. If after reviewing the reports, a motion is determined to be the best way to proceed, we can file on the next court date before the trial.

As your attorney in this matter it is my advice to you that we proceed in this manner. Of course if there is another way that you wish me to proceed, I will weigh it, and as your attorney, counsel you on whether or not it would be wise for you to proceed in such a manner.

If you have any other questions or issues, please feel free to contact me at my office.

Sincerely,

Yvonne Christian-Williams
Assistant Public Defender

YCW:mld

Printed on Recycled Paper

COUNTY OF COOK

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS
PLAINTIFF

DAVID D. Ercoli

DEFENDANT

CASE NO.    Doc Number M016017523-1

Filed in Markum Courthouse

## MOTION TO QUASH ARREST AND SUPPRESS EVIDENCE

Petitioner, David D. Ercoli, the defendant in the above entitled cause, moves this Honorable Court to quash his arrest and suppress from introduction into evidence the direct and indirect products of said arrest.

In support the petitioner states:

1.) On 8-16-01, petitioner was arrested at or near 1541 ABERDEEN ST, CHICAGO HTS, IL.

2.) The arrest was a seizure as contemplated by the Forth Amendment to the United States Constitution.

3.) The Fourth Amendment of the United States Constitution guarantees the right of persons to be secure from unreasonable search and seizure of their persons, houses, papers, and effects, ~~except~~ home and Automoblie..

4.) The Exclusionary Rule prohibits the introduction into evidence of the direct and indirect products of unreasonable searches and seizures, said rule enunciated in Mapp v. Ohio.

5.) The arrest of petitioner was made without authority of a valid search warrant. My car was locked and sitten and they towed it, and searched it without my permission....

6.) The conduct of petitioner prior to his arrest was such as would not reasonably be interpreted by the arresting officers as constituting probable cause that petitioner had committed or was about to commit a crime.

7.) Subsequent to petitioner's arrest, he was searched, interrogated, fingerprinted, and otherwise processed, questioned, and exhibited by the police.

I, David D. Ercoli, being first duly sworn on oath, deposes and says that he has read the foregoing petition by him subscribed, that he knows the contents thereof, and that this petition is true in substance and in fact.

"OFFICIAL SEAL"
IVORY R. AVERY
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 08/02/2004

This 21st day of Sept 2001

Respectfully submitted,

David D. Ercoli

*ARRESTED FOR possession of stolen property & obstruction of justice*
*I WAS ARRESTED for possession of a computer*
*possession in a carry linked to stolen m/c no search warrant*

1    burglary tools when, in fact, he never had

2    any on him. I believe that would be

3    inadmissible and not part of the res gestae

4    in terms of how they happened to get a hold

5        of him.

6    BY MR. THOMPSON:

7            I have no intention of getting into

8        that. I feel that that is not proper. *NO ITS ILLEGAL!*

9    BY MR. HOLCOMB:

10            Thank you.

11    THE COURT:

12            All right.

13        WHEREUPON THE PROCEEDINGS WERE TAKEN ONCE

14        AGAIN BEFORE THE JURY.

15    BY Mr. THOMPSON:

16    Q.    Detective Kirby, Detective Vandenburgh had

17        contacted you regarding his investigation of

18        the theft of a couple of Harleys, is that

19        right? *NO, KIRBY CONTACTED VANDENBURGH AUG 16, 2001*

20    A.    Yes, sir. *BECAUSE "FELINE WAS ARRESTED 4 POSS OF BURGLARY" TOOLS" AND GAVE MY NAME & AUTO THEFT THAT*

21    Q.    Those thefts occurred roughly mid July of *HAPPENED IN JULY, THEN POLICE CAME AND ARRESTED ME AT HOME*

22        2001?

23    A.    Yes.

24    Q.    Correct?

25    A.    Yes.

                                            104

MICHELLE MANOSKI
OFFICIAL COURT REPORTER

1    ~~V-a-n-D-e-n-b-u-r-g-h.~~

2    Q.   How are you presently employed?

3    A.   Detective Sergeant, Schererville Police, ~~INDIANA~~

4         Department.

5    Q.   ~~The middle of July, the 15th, or 16th of~~

6         ~~2001, were you so employed?~~ *HIS INVESTIGATION STARTED*

7    A.   Yes, sir.          *JULY 25, ACCORDING to police reports.*

8    Q.   In fact, you were employed to investigate

9         the theft of those two Harleys that we have

10        been talking about?

11   A.   Yes, sir.

12   Q.   In the course of your investigation, did

13        you--  first of all, let's start off with

14        when you started your investigation, if you

15        remember the date?

16   A.   It was within a day or two of the reports

17        being made.  They would have been forwarded

18        to the Detective Bureau, at which time it

19        would have been assigned to investigate

20        them. ~~And there were really no leads at that~~

21        ~~point until I received a phone call~~

22        ~~approximately nine days after they were~~

23        ~~stolen from.~~  I spoke with two detectives

24        from Antioch, Detective Summerville and

25        Officer Young, I believe. ~~July 25, 2001~~.

                                              116

1    Q.    What did you do next in the course of your

2          investigation?

3    A.    ~~The next real big development after-- Well,~~

4          ~~one of the bikes had been recovered and I~~

5    Q.    Which one was that, by the way?

6    A.    The one belonging to Dusan Ivetich, State's

7          Exhibit #8.

8    Q.    So that bike had been recovered in Antioch?

9    A.    Yes. *July 25, 2001 According to police reports.*

10   Q.    Then what happened?

11   A.    Next I became involved in the investigation

12         with the Detective Kirby. *Aug 16, 2001.*

13   Q.    The fellow that just testified?

14   A.    Yes.

15   Q.    All right.

16   A.    At which time we shared information that we

17         obtained through the investigation, as far

18         as some information, as far as how these

19         bikes became missing and where they were

20         taken to and all that.

21   Q.    Well, was the red and white bike ever

22         recovered, as far as you know?

23   A.    No.

24   Q.    That's the bike that belonged to Linda

25         Kelly?

                                                    117

*THIS IS VANDENBURGH'S TESTIMONY*
*HE'S A SCHERERVILLE, INDIANA DETECTIVE*
*GOING INTO ILLINOIS..*

*INDIANA QUICK ILLINOIS*
*NO SEARCH WARRANT*

1    BY MR. HOLCOMB:

2          No objection.

3    THE COURT:

4          Admitted.

5       WHEREUPON STATE'S EXHIBIT #11 IS ADMITTED

6       INTO THE EVIDENCE.

7    BY MR. THOMPSON:

8    Q.   ~~How is it that you ended up going over to~~

9         ~~was this in Chicago Heights?~~ *ILLINOIS*

10   A.   Yes.

11   Q.   To go and continue this investigation, was

12        that because of a phone call that you

13        received from ~~Kirby - Lynwood~~, *ILLINOIS*

14   A.   Yes, sir, it was.

15   Q.   Is there any other evidence that you

16        collected with respect to your investigation

17        regarding these two motorcycles?

18   A.   Yes, there was a pager that was recovered,

19        it was in the Kelly motorcycle. There was

20        ~~also two fork tubes, covers, that were~~

21        ~~recovered inside of the garage and a helmet~~

22        ~~cover that was with them.~~

23   Q.   All right. I'll hand to you what has

24        previously been marked as State's #12 and

25        #13.  When you referred to those last items

                                                      121

MICHELLE MANOSKI
OFFICIAL COURT REPORTER

STOLEN LETTERS

1   A.   No, not as an expert, no.

2   Q.   Have you ever gone to any kind of school as

3         an expert for handwriting analysis?

4   A.   No, sir.

5   Q.   Have you ever testified in court as a

6         handwriting expert?

7   A.   No, not as an expert, no, sir.

8   Q.   Were you present at the Lake County Jail to

9         observe David Ercoli, the defendant herein

10       sign any documents?

11  A.   No, sir.

12  Q.   Did you book David Ercoli into the Lake

13       County Jail yourself or take him to the Lake

14       County Jail, I should say?

15  A.   No.

16  Q.   Have you ever seen him sign any document in

17       your life?

18  A.   No, sir.

19  Q.   With regards to II-A E and F. where did you

20       get those documents from?

21  A.   I got them from Gary Teung. *AND GARY GOT THEM FROM HIS GIRLFRIEND JACKLYN MACION WHO SISTER RENTS*

22  Q.   From where? *PLACE TO MY BROTHER TIMOTHY.*

23  A.   From Gary Teung. I may actually have been

24       physically handed one. he told me about

25       them. His girlfriend may have been the on

                                                        129

My Brother Timothy was living at this address and so was Tehne's girlfriend which is the sister of the women who rents the rooms in his house.

VANDENBURGH'S STATEMENT

1    that correct?

2  A.  Yes.

3  Q.  You had not seen those documents prior to

4    that time in your life, had you?

5  A.  No, I had not.

6  Q.  Those items as far as you knew were

7    addressed to 1541 Aberdeen Street in Chicago

8    Heights, Illinois, were they not?

9  A.  I don't see an address on these.

10  Q.  Was there an envelope along with those?

11  A.  I believe there were some envelopes, I'm not

12    sure, they were all in envelopes. Yes.

13  Q.  And the address that you were at was not

14    1541 Aberdeen Street, was it?

15  A.  Not at that time, no, not when I received

16    them.

17  Q.  In fact, 1541 Aberdeen would be all the way

18    across town from the address where you were,

19    is that correct?

20  A.  I wouldn't call it "across town" it's a few

21    blocks away.

22  Q.  Blocks away? How many blocks away?

23  A.  Ten blocks, maybe a mile-- I don't think

24    it's that far.

25  Q.  Okay.

131

1   Q.   So for purposes of publishing, I'm looking

2        at State's Exhibit Group E, which has been

3        admitted into evidence and I'll not read

4        everything here, the jury will be able to

5        consider all this at the time of

6        deliberation, but for example, group #1-E,

7        "I should have told Gary to get them damn

8        bikes out of the garage and get rid of them

9        himself, but I was looking to make $300 a

10       bike." On the back of page 2 of Group #1-A

11       quoting, "I just miss the good times of

12       sitting up there with him and his brother

13       and Christine and Jacqueline. Talk to him,

14       Tim, and ask him not to come to court--"

15       referring to Gary, "--and testify. They

16       can't make him do shit." Etcetera, etcetera,

17       but that's all I wanted to point out at this

18       point. The jury will be able to read the

19       whole letters. Getting back to then, I guess

20       we are coming to the conclusion of your

21       investigation, right?

22   A.   Yes.

23   Q.   Was there any other evidence, any other

24       items of information that you collected in

25       the course of your investigation of the

155

1    Q.  The same Gary Teune whose property you were

2        at when you found the various stolen items

3        from the motorcycle?

4    A.  I didn't hear you.

5    Q.  The same Gary Teune whose property you went

6        to and recovered a lock and a couple pagers,

7        is that correct?

8    A.  It wasn't his property, but it is the house

9        that he was staying or residing at.

10   Q.  I'm sorry.  Let me rephrase it.  Gary Teune

11       was living at a certain address where you

12       went and you recovered some stolen items

13       related to these two stolen motorcycles?

14   A.  Correct.

15   Q.  And that's the same person who gave you

16       those letters?

17   A.  Correct.

18   Q.  Nothing further.

19   THE COURT:

20           Redirect?

21   BY MR. THOMPSON:

22           Thank you, Officer.

23   THE COURT:

24           All right. You are released from your

25       subpoena, you are free to leave or stay as

                                                    157

```
 1    THE COURT:

 2           What did you say?

 3    BY THE DEFENDANT:

 4           I said I figured that.

 5    THE COURT:

 6           All right.  And there is a filing of an

 7    affidavit.  Your exhibits are attached.

 8    What are you asking for in this affidavit

 9    that you're filing?

10    BY THE DEFENDANT:

11           I was just pointing out that the letter

12    and the main piece, or the main letter on

13    there, that was -- this mail that was stolen

14    and admitted into evidence, it never was

15    investigated by my lawyer or nothing.  You

16    know darn well.  He -- you know, he

17    questioned my brother.  They had him on the

18    stand.  Why couldn't they ask him when I

19    wasn't here?  You know, why couldn't they

20    ask my brother about the stolen letters.

21    THE COURT:

22           Who is your brother?

23    BY THE DEFENDANT:

24           Timothy Ultsch.

25    THE COURT:
                                              286
```

Handwritten margin note (left side, vertical): AND I WASN'T IN COURT. I THOUGHT I'M SUPPOSE TO BE AT ALL STAGES OF MY JURY TRIAL..

Handwritten note (line 13): ↗ INTERFERED WITH SOMEONE PULLING IT OUTS TOO

Handwritten note (line 19): MORE ADD ONS

- United States Constitution..

SEE: TOWER v. CLOVER, 467 US 914, 81 LEd2d 758, 104 SCt 2820

[IN] EX PARTE JACKSON, 96 US 727, 24 LEd 877 (1877). It WAS HELD THAT A SEALED LETTER INTRUSTED TO THE MAIL IS protected by the Amendments..
THE MAIL IS A public SERVICE FURNISHED BY the GOVERNMENT. THE TELEPHONE IS A public SERVICE, FURNISHED by its Authority, there IS, IN ESSENCE, NO DIFFERENCE between the sealed Letter And the private telephone MESSAGE.. 4TH AND 5TH AMENDMENTS VIOLATIONS WHAT EVER THE MEAN EMPLOYED, MUST BE DEEMED A VIOLATION OF THE 4TH AMENDMENT AND THE USE, AS EVIDENCE IN A CRIMINAL PROCEEDING OF FACTS ASCERTAINED by SUCH INTRUSION MUST BE DEEMED A VIOLATION OF THE 5TH AMENDMENT..

THE TIMES — JUNE/2003 — NEWS

INDIANAPOLIS

# Court: Police cannot use illegally recorded phone calls

By The Associated Press

The contents of illegally intercepted telephone calls cannot be used as evidence in Indiana's courts, even if police had no part in tapping or recording the calls, the Indiana Court of Appeals ruled Monday.

The court said in two decisions that Indiana would not recognize a "clean hands" exception allowing the government to use such evidence "that literally falls into its hands."

The 6th U.S. Circuit Court of Appeals has recognized that exception to a federal law regulating electronic surveillance by law enforcement and private citizens. But three other federal appeals courts have declined to apply the exception, according to Monday's rulings.

The Indiana Court of Appeals said the objective of the federal law is to shield an individual's private communications from disclosure, "regardless of whether a private party or the government intercepts the communication."

It also said suppression of such evidence was consistent with provisions of the Indiana Constitution that are designed "to protect from unreasonable police activity those areas of life that Hoosiers regard as private."

*EXIBIT*


**UNITED STATES
POSTAL SERVICE**

November 14, 2002

Mr. David Ercoli
2293 N Main St
Crown Point, IN  46307-1854

Dear Mr. Ercoli:

You wrote a letter to the Postal Service to report that someone may have
tampered with mail addressed to your brother.

Because of the nature of your inquiry, I am referring your correspondence to the
Postal Inspection Service which is the law enforcement arm of the United States
Postal Service.

Complaints alleging mail tampering or theft come under the exclusive jurisdiction
of the Postal Inspection Service. If additional details are required, a
representative of the Postal Inspection Service will contact you.

Thank you for bringing this to our attention.

Sincerely,

John Windle
Consumer Affairs Representative

Reference: V15040418

P.O. Box 9631
INDIANAPOLIS, IN 46298-9631
TEL: (800) 558-1777, OPTION 4
FAX: (317) 870-8684



**U.S. Department of Justice**

United States Attorney
Northern District of Indiana

*EXIBIT*

5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320

(219) 937- 5500
FAX: (219) 852- 2770
TTD: (219) 933- 1250

August 26, 2002

Mr. David Ercoli -XA442
2293 N. Main Street
Crown Point, Indiana 46307

Dear Mr. Ercoli:

I am in receipt of your letter of August 18, 2002. Investigations relating the to theft of mail are conducted by the United States Postal Inspection Service. They can be reached at (219) 886-8237.

Thank you for your inquiry.

Very truly yours,

JOSEPH S. VAN BOKKELEN
UNITED STATES ATTORNEY

By: _____

Philip P. Simon
Assistant United States Attorney

PPS/tw

*Tommy Lunas*

On 07-17-01 at about 2pm I met with Dusan Ivetich at the police station reference this incident. Dusan states, he went to the Schererville Greek fest and noticed a male white looking at his motorcycle. Dusan states, the male white was in his 30's, long hair pulled back in a ponytail wearing blue jeans and a black T-shirt. At the time of the theft, the male white who stole his motorcycle had very long hair and wearing a black shirt and blue jeans. I also asked Dusan if he locked up his motorcycle and he stated "yes, I placed a Crypto lock lock on the front brake calipers, but was missing when I went to look for it later at paragon".

Date 07-18-01    Time  x   Reporting Officer  Weaver

SCHERERVILLE, INDIANA P.D.

~~I'M 51 YEARS~~
~~OLD AT THE TIME~~
~~HE SEEN THIS GUY~~
~~STEAL HIS BIKE.~~

~~MY HAIR HAS ALWAYS~~
~~BEEN SHORT. (LONG)~~ !!

IN ANTIOCH SUPPLEMENT
MR IVETICH STATED "A
UNKNOWN M/W WITH LONG
DARK HAIR..." ALSO

~~...............~~
Date ...........25-..
........3:04.

HE MUST HAVE NEVER LOCKED
THE LOCK IF HE WENT BACK
LOOKING FOR IT! YOU CAN'T
GET THESE LOCKS OFF ULESS
YOU HAVE A GRINDER. HE
MAY HAVE NEVER LOCKED IT
BECAUSE THEY CAN BE A
PAIN TO LOCK.

OFFICE OF THE PUBLIC DEFENDER

*ExiBit*

JULY 29, 2002

DAVID ERCOLI
LAKE COUNTY JAIL
XA 442

THE STATE HAS AGREED TO A PLEA AGREEMENT OF 3 YEARS FOR EACH CASE,

TO BE SERVED CONCURRENTLY. SINCE YOU HAVE BEEN IN CUSTODY SINCE

AUGUST 2001, YOU WOULD HAVE UNTIL FEBRUARY 2003 TO SERVE AND THEN BE

RELEASED. I THINK THAT IS A GOOD DEAL FOR YOU, AS COMPARED TO THE 16

YEARS PLUS 12 FOR THE HABITUAL THAT YOU FACE IF CONVICTED AT TRIAL. I

AM WELL AWARE OF THE MANY INCONSISTENCIES IN THE STATE'S CASE AND

THE LIES THAT TEUNE TOLD. HOWEVER, IF THE JURY BELIEVES HIM IN SPITE OF

ME BRINGING OUT TO THEM ALL OF THE WAYS THAT HE HAS LIED AND THE

BREAK THAT WAS GIVEN TO HIM BY THE STATE, YOU WOULD STILL BE CONVIC-

TED AND FACE 28 YEARS MAXIMUM.. WRITE BACK AND LET ME KNOW WHAT

YOU WANT TO DO.

NOAH L. HOLCOMB, JR.

*MR. HOLCOMB NEVER BROUGHT OUT THE LIES TEUNE MADE.*

*HE WANTED ME TO PLEA GUILTY EVEN THOUGH I WAS CLAIMING MY INNOCENTS*

# OFFICE OF THE PUBLIC DEFENDER
SUPERIOR COURT OF LAKE COUNTY
CRIMINAL DIVISION
2293 NORTH MAIN STREET
CROWN POINT, INDIANA 46307
TELEPHONE (219) 755-3550
FAX (219) 755-3557
*DAVID R. SCHNEIDER, EXECUTIVE DIRECTOR*
*DAVID W. OLSON, ASSISTANT DIRECTOR*

*EXIBIT*

TO: DAVID D. ERCOLI
LAKE COUNTY JAIL, SECT ION: XA 442

FROM: NOAH L. HOLCOMB, JR.
PUBLIC DEFENDER

DATE: JUNE 18, 2002

RE: STATE OF INDIANA vs. DAVID D. ERCOLI

It finally hit me . . . there had to be a deal with Teune. Please see the enclosed two pages of State's Discovery consisting of VanDenburgh's reports which he submitted to the Prosecutor when he filed the charges against you. You are the only suspect, Teune is a witness not suspect. They never were going to charge Teune, so that means they made a deal with him.

DO NOT DISCUSS THIS WITH ANYONE.

NLH/dd

*MR. HOLCOMB ALREADY KNEW TEUNE
WAS A WITNESS ACCORDING TO MR.
VANDENBURGHS DEPOSITION TAKEN
MARCH 14, 2002. PAGE 17 AT LINS 17-18/
NOT ONLY THIS, BUT SCHERERVILLE POLICE
REPORT 1 AND 2 DATED 8-17-01 HE'S A WITNESS.*

# OFFICE OF THE PUBLIC DEFENDER
## SUPERIOR COURT OF LAKE COUNTY
### CRIMINAL DIVISION
### LAKE COUNTY GOVERNMENT CENTER
### 2293 NORTH MAIN STREET
### CROWN POINT, INDIANA 46307
### TELEPHONE (219) 755-3550
### FAX (219) 755-3557
*DAVID R. SCHNEIDER, EXECUTIVE DIRECTOR*
*DAVID W. OLSON, ASSISTANT DIRECTOR*

March 5, 2002

*EXIBIT*

David D. Ultsch a/k/a Ercoli
Lake County Jail
Section: XA 442

RE:     Your upcoming trial

Dear Mr. Ercoli:

Your last letter shocked me! We are less than a week from your speedy trial and you just now tell me that you have an alibi? An alibi is supposed to be filed 20 days before trial!

You should have given me this information in December & January when you were filing all those motions!

Very truly yours,

*Noah L. Holcomb Jr.*

NOAH L. HOLCOMB, JR.
Felony Public Defender

NLH/dd

*I wasn't counting on the ~~████~~ being my public defender. My motion for Sub of Counsel was never heard!!!*

STATE OF INDIANA )
             ) ss:
COUNTY OF LAKE )

SUPERIOR COURT OF LAKE COUNTY
CRIMINAL DIVISION, ROOM IV
CROWN POINT, INDIANA

STATE OF INDIANA, )
           )
    Plaintiff, )
           )
      v. )
           )
DAVID DOUGLAS ERCOLI, )
           )
    Defendant. )

CAUSE 45G04-0108-CF-00181

### ORDER

**01-03-02**    The defendant, *pro se*, files a motion for substitution of counsel. The court now sets this matter for a hearing on the motion for substitution of counsel on February 21, 2002, at 8:30 am. The clerk is ordered to notify the defendant in the Lake County Jail, Deputy Public Defender Noah Holcomb, and the deputy prosecuting attorney.

SO ORDERED: **THOMAS P. STEFANIAK, Jr.,** Judge Room IV. (dh)

Received 1-8-2002

I WAS NEVER BROUGHT TO COURT TO
BE HEARD ON THE DATE OF 2/21/02
ON MY MOTION FOR DIFFERENT COUNSEL.

MY PUBLIC DEFENDER TOLD ME THAT THE
LEGISLATER HAD CHAGED AND THAT I'M ONLY
ALLOWED ONE PUBLIC DEFENDER AND I'M
STUCK WITH HIM!!

⑨ **ANTIOCH POLICE DEPARTMENT**
433 Orchard, Antioch, IL 60002
847-395-8585 Fax # 847-395-8588

**Chief Charles Watkins**

*Supplemental Report / Investigations*

Page 7 of

| 1. Nature of Incident | 2. Incident Number |
|---|---|
| ~~Possession of Stolen Motorcycles~~ | 01-2029 |

| 3. Subject Classification | 4. IUCR Code | 5. APD Classification |
|---|---|---|
| ☐ Suspect/Arrestee ☐ Witness ☐ Complainant ☒ Other | | |

| 6. Subject Name Last First Middle Initial | 7. Date of Birth |
|---|---|
| Sgt Somerville #006 | |

| 8. Subjects Address | 9. Telephone Number |
|---|---|
| Antioch Police Department | |

| 10. Date & Time of Supplement | 11. Date & Time of Original Report |
|---|---|
| 07-27-01 | 07-25-01 730 PM |

12. Narrative

On 07-27-01, I spoke to Dusan Ivetich, the registered owner of the purple Harley Davidson. Ivetich said on July 16, 2001 at about 1230 AM, he parked his motorcycle in front of a Schererville, Indiana restaurant. He said he heard the roar of his motor and ran outside to see his cycle being driven away by an unknown m/w with long dark hair. Ivetich said he filed a police report with Schererville PD. He said he did not give anyone permission to possess his motorcycle and he never heard of ~~Daniel Edwards~~. Ivetich said the motorcycle is valued at $26,000 and he has both sets of ignition keys. Ivetich said he wants to prosecute those responsible for the theft and possession of his property. Ivetich said he contacted his insurance company regarding the theft, but has not received payment on the claim. I told Ivetich I would contact him when the cycle is clear for release.

I contacted Schererville PD and requested a copy of the theft report. I received a copy of report 01-007104, dated 07-16-01.

At 3 PM, I spoke to Jay Rzeplinski, who said on Oct 10, 1997, at 830 PM, he parked his green Harley Davidson motorcycle vin 1HD1BNL10TY051101 at a Kenosha Wisconsin hotdog stand. He said 20 minutes later; he came out to find his motorcycle gone. Rzeplinski said he had the keys for the bike and he gave no one permission to ride or possess the cycle. Rzeplinski said he filed a claim with Sentry Claim service/Dairyland Insurance Co. and received $20,058.

I contacted Kenosha PD and received a copy of theft report # 97-117492

I telephoned Dairyland Insurance Co and spoke to claims adjuster, Roger Nelson, who confirm the claim had been paid. Nelson said the company fully intends to prosecute responsible parties.

At 430 PM, I located Ronald Taylor, who said on 07-05-01 a report was filed with the Lake County sheriff dept documenting a break in at his former residence at 22760 W Rt 173 in Antioch, IL. Taylor said he recently sold the property to a man named Terry Upton. Taylor said he left personal property at the residence in a metal desk. He said he had an agreement with Upton to remove the property at a later date. Taylor said sometime on 07-02-01, persons unknown entered the property and did damage to wall and windows.

| ☐Chief ☐Squad Rm ☐R/O ☐Inv ☐OFC ☐S/A ☐Other | ☐ Notify Victim ☐ Notify Witness(s) |
|---|---|

| ☐ Branch III Grayslake, IL ☐ County Court RM C- | Date: Date: | Time: Time: | ☐ Open ☐ Admin Closed ☐ Susp Inv ☐ Closed ☒ Closed by Arrest ☐ Other |
|---|---|---|---|

| 13. Leads Number | 14. Date and Time Sent | 15. Date and Time Cancelled |
|---|---|---|

| 16. Officers Signature | 17. Shift Sergeant Signature | 18. Supervisor Approval | 19. Date | 20. Time |
|---|---|---|---|---|
| Sgt Somerville #006 C. Somerville | | LRKSk | 7/31/01 | 1kin |

DEFENDANT ERCOLI HAS SHORT. SANDY/GRAY HAIR, AND HE NEVER HAD LONG HAIR. THIS POLICE REPORT SAYS THAT A DANIEL EDWARDS WAS CAUGHT WITH STOLEN M/C.

# \* DEMAND FOR A JURY \*

THE PLAINTIFF PURSUANT to ALL APPLICABLE PROVISSIONS DEMAND A TRIAL BY JURY...

# \* DAMAGES \*

**A.) AWARD COMPENSATORY damages in the FOLLOWING AMOUNT:**

1. $300,000 JOINTLY AND SEVERALLY AGAINST DEFENDANTS- VANDENBURGH, HOLCOMB JR, KIRBY.

2. $150,000 JOINTLY AND SEVERALLY AGAINST DEFENDANTS- TATGENHORST, DORIAN, JOHN DOE..

3. $50,000 JOINTLY AND SEVERALLY AGAINST DEFENDANTS- PAIVA, RAINEY, TEUNE, MARION..

**B.) AWARD PUNITIVE DAMAGES IN the FOLLOWING AMOUNTS:**

1. $100,000 JOINTLY AND SEVERALLY AGAINST DEFENDANTS- VANDENBURGH, HOLCOMB JR, KIRBY..

2. $50,000 JOINTLY AND SEVERALLY AGAINST DEFENDANTS- TATGENHORST, DORIAN, JOHN DOE..

3. $25,000 JOINTLY AND SEVERALLY AGAINST DEFENDANTS- PAIVA, RAINEY, TEUNE, MARION.

**C.) GRANT SUCH OTHER RELIEF AS IT MAY APPEAR THAT PLAINTIFF IS ENTITLED,, DEFENDANTS PAY ALL COST OF THIS ACTION AND ATTORNEY FEES AND TAKE NO RELIEF..**

**VI.** **Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

1. Declortory Judgement that A declaration be entered that the Defendants Actions As Denominated In the Body of this Complaint Violate the Constitution And Ercoli's Civil Rights, to Life Liberity And the pursuit of Happiness ..

**CERTIFICATION**

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this 21 ˢᵗ day of July , 20 03

David D. Ercoli
(Signature of plaintiff or plaintiffs)

DAVID D. ERCOLI
(Print name)

#952813
(I.D. Number),

PUTNAMVILLE CORRECTIONAL FACILITY

1946 WEST U.S. HWY 40

GREENCASTLE, INDIANA 46135
(Address)