

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN ILLINOIS

| | |
|---|---|
| DAVID D. ERCOLI ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 03 C 5172 |
| ) | |
| WILLIE PAIVA, et al. ) | Judge Ronald A. Guzmán |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David D. Ercoli, an inmate in the Indiana Department of Corrections at Greencastle, Indiana, has brought this *pro se* action pursuant to 42 U.S.C. § 1983. He alleges that defendants Daniel Kirby ("Kirby"), a Detective for the Village of Lynwood Police Department; Brian Dorian ("Dorian"), a Detective for the Village of Lynwood Police Department; Dennis Tatgenhorst ("Tatgenhorst"), a Sergeant for the Village of Lynwood Police Department ("Department") (collectively, "Defendants"); and Brian Vandenburgh ("Vandenburgh") conducted illegal searches and seizures. Defendants Kirby, Dorian, and Tatgenhorst have filed a motion for summary judgment. Defendant Vandenburgh has filed an answer to the amended complaint. For the following reasons, the court grants Defendants' motion for summary judgment and dismisses them from this action.

## LEGAL STANDARD

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Lewis v. Holsum of Ft. Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) ("If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In order to present a genuine issue of material fact, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (*citing First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Once the moving party has sustained the initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. *Id.* at 324.

## BACKGROUND FACTS

Before analyzing the parties' arguments, the Court notes the role and effect of Local Rule 56.1 in summary judgment proceedings. While Rule 56 governs the parties' summary judgment obligations, Local Rule 56.1 reflects "an attempt to make the parties' respective summary judgment

2

obligations explicit." *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

Local Rule 56.1(a) requires the moving party to first serve and file any affidavits and other materials referred to in Federal Rule of Civil Procedure 56(e), a supporting memorandum of law, and a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law. LR 56.1(a)(1)- (3). Local Rule 56.1(b) requires a party opposing a summary judgment motion to serve and file a memorandum of law, any materials or affidavits referred to in Federal Rule of Civil Procedure 56(e), as well as a concise response to the movant's statement of facts. LR 56.1(b)(1)-(3). This response "shall contain ... a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon" and "a statement consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(A)-(B). Failure to properly controvert a moving party's statement of facts results in the moving party's version of the facts being deemed admitted. L R 56.1(b)(3)(B). Strict enforcement of Local Rule 56.1's requirements has been consistently upheld by the Seventh Circuit as the court is not required to "scour the record in search of evidence to defeat a motion for summary judgment." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002) (internal quotations omitted).

With these principles in mind, the Court notes that Ercoli has failed to comply with his obligations under Local Rule 56.1(b). He failed to file a separate response to each numbered paragraph of defendants' statement of uncontested facts. He did not file "a statement , consisting of short numbered paragraphs, of any additional facts" requiring the denial of the motion for

summary judgment. *See* Local Rule 56.1(b)(3)(B). The rambling statements in Ercoli's response are neither short, concise, nor nonargumentative. Moreover, the materials attached as exhibits to his response are not authenticated. Although his narrative contains a declaration that it is made "under the penalty of perjury," the bulk of the statements are either argumentative, not based on his personal knowledge, or both. *See Durovic v. Palmer*, 342 F.2d 634, 637 (7th Cir. 1965) (affidavits offered in opposition to a motion for summary judgment were defective to the extent they were not based on personal knowledge of the affiant). Further, Ercoli's failure to comply with the Local Rules is not excused by his *pro se* status. *See Stevens v. Navistar Int'l Transp. Corp.*, 244 F.Supp.2d 906, 910 (N.D.Ill. 2002) (holding that even though the court reads a *pro se* plaintiffs pleadings liberally, *pro se* status does not excuse a failure to comply with Local Rule 56.1). Ercoli received notice from defendants of the need to comply with Federal Rule of Civil Procedure 56 and Local Rule 56.1 and the consequences of not doing so. Having received this notice, Ercoli was aware of the procedures he had to follow and still failed to comply. For those reasons, Defendants' Statement of Material Facts Pursuant to Local Rule 56.1(a) and Supporting Exhibits is deemed admitted in its entirety, pursuant to Local Rule 56.1(b)(3)(B).

The following facts are drawn from Defendants' Local Rule 56.1 Statement of Uncontested Facts. On August 16, 2001, at approximately 2:00 a.m., Tatgenhorst was working routine patrol in a marked Village of Lynwood Police Department squad car in the vicinity of Glenwood Dyer Road and Torrence Avenue. (Defendants' Statement of Uncontested Facts ("Defendants' Facts") ¶¶ 1-2.) At that time, he observed two white male subjects walking on the shoulder of Glenwood Dyer Road. (Defendants' Facts ¶ 3.) Tatgenhorst approached the subjects in his vehicle and requested identification. (Defendants' Facts ¶ 4.) The request for identification was based upon Tatgenhorst's

4

suspicion that criminal activity was imminent or had already occurred. (Defendants' Facts ¶ 5.) Specifically, the two men were walking in the rain at 2:00 a.m., in an area where no single-family homes or apartments were located. (Defendants' Facts ¶ 5.) Furthermore, the few businesses located in the area were all closed. (Defendants' Facts ¶ 5.) Also, the two men were wearing dark clothing and black stocking caps. (Defendants' Facts ¶ 5.) In Tatgenhorst's experience, it was extremely rare for pedestrians to traverse the area, let alone in the early morning hours. (Defendants' Facts ¶ 5.)

One of the two men, later identified as Gary Teune "(Teune"), handed Tatgenhorst his identification. (Defendants' Facts ¶ 6.) The other individual immediately ran from the scene. (Defendants' Facts ¶ 6.) While the subject was running away, Teune shouted, "Dave, stop and show him your I.D." (Defendants' Facts ¶ 6.) At the scene, Teune identified the other party accompanying him as David Ercoli ("Ercoli"). (Defendants' Facts ¶ 7.) Teune admitted to Tatgenhorst that he and Ercoli were on their way to burglarize a nearby bar when they were stopped. (Defendants' Facts ¶ 7.) A pat-down search revealed two small crowbars, latex gloves, and a long-handled screwdriver on Teune's possession. (Defendants' Facts ¶ 7.)

While at the scene, Teune informed Tatgenhorst that Ercoli had driven the two of them to the area of the aborted burglary. (Defendants' Facts ¶ 8.) Teune directed Tatgenhorst to Ercoli's vehicle, which was parked nearby in a public area just off the road. (Defendants' Facts ¶ 8.) Tatgenhorst radioed the dispatcher and confirmed that Ercoli was the registered owner of the vehicle. (Defendants' Facts ¶ 8.) Ercoli's vehicle was impounded as part of the burglary investigation. (Defendants' Facts ¶ 8.)

Teune was transported to the police station for processing. (Defendants' Facts ¶ 9.) The Assistant Cook County State's Attorney approved the filing of a felony possession of burglary tools

against Teune. (Defendants' Facts ¶ 9.) While at the police station, Tatgenhorst identified a photograph of Ercoli and confirmed that he was the subject accompanying Teune who had fled the scene earlier that morning. (Defendants' Facts ¶ 10.)

Kirby, a detective, was assigned the investigation of the attempted burglary involving Ercoli and Teune. (Defendants' Facts ¶ 12.) Teune claimed to have information relating to other criminal activity by Ercoli. (Defendants' Facts ¶ 12.) During his interview, Teune (again) admitted to Kirby that he and Ercoli were on their way to commit a burglary when they encountered Tatgenhorst. (Defendants' Facts ¶ 13.) Teune provided a detailed statement regarding his knowledge of Ercoli's theft of two motorcycles in Schererville, Indiana. (Defendants' Facts ¶ 13; Defendants' Facts, Exhibit C.) Among other things, Teune stated that he observed a "miniature computer" taken from a pouch attached to one of the stolen motorcycles. (Defendants' Facts, Exhibit C.) He also informed the police that Ercoli had stored the stolen motorcycles in a garage located at 1541 Aberdeen, Chicago Heights, Illinois. (Defendants' Facts, Exhibit C.) Both Teune and Ercoli resided (as renters) in a single-family residence at that address. (Defendants' Facts ¶ 13.) A review of Ercoli's criminal history by Kirby reflected numerous contacts with law enforcement, including several arrests. (Defendants' Facts ¶ 13.)

Kirby and Dorian traveled to the Aberdeen address. (Defendants' Facts ¶ 14.) They were met by several officers from the City of Chicago Heights Police Department. (Defendants' Facts ¶ 14.) No one answered the door to the residence after several knocks. (Defendants' Facts ¶ 14.) Dorian and Kirby remained on the scene and conducted surveillance on the house. (Defendants' Facts ¶ 14.) Ultimately, Ercoli exited the home and was arrested by Kirby and Dorian on the public parkway adjacent to the street. (Defendants' Facts ¶ 15.) After being advised of his *Miranda* rights,

Ercoli refused to speak to either Kirby or Dorian and was subsequently placed in a holding cell. (Defendants' Facts ¶ 15.)

A search of Ercoli's vehicle was conducted while it was impounded. (Defendants' Facts ¶ 16.) Two "two-way" radios, each capable of being used as a police scanner, were inventoried. (Defendants' Facts ¶ 16.) Also observed in the back seat of Ercoli's vehicle were two pagers, one black and one blue. (Defendants' Facts ¶ 16.) The search also uncovered burglary tools, including a pry bar, screwdriver and similar items, located under the hood of Ercoli's vehicle. (Defendants' Facts ¶ 16.)

Dorian, Kirby, and Sergeant Vandenburgh of the Schererville Police Department, accompanied by Teune, traveled to the Aberdeen address to investigate Ercoli's involvement in the theft of the two motorcycles. (Defendants' Facts ¶¶ 17-19.) Teune informed the officers that evidence of the thefts could be found in a garage behind the house. (Defendants' Facts ¶ 18.) According to both Teune and the landlord, Jennifer Rainey, the garage was a common area used by all of the residents. (Defendants' Facts ¶¶ 18-19.) Both Teune and Ms. Rainey authorized a search of the garage. (Defendants' Facts ¶ 19; Defendants' Facts, Exhibit D.) The officers inventoried various items from the garage as part of their criminal investigation. (Defendants' Facts ¶ 20.) At no time did Kirby, Dorian, Sergeant Vandenburgh, or any law enforcement officer enter Ercoli's residence. (Defendants' Facts ¶ 19.)

While in the garage, Sergeant Vandenburgh questioned Teune on whether he had ever observed a black pager, which looked like a computer, in Ercoli's possession. (Defendants' Facts ¶ 21.) The black pager, according to Sergeant Vandenburgh, had been located in a pouch on one of the stolen motorcycles. (Defendants' Facts ¶ 21.) Kirby informed Sergeant Vandenburgh that he

7

had observed the item in plain view in the back seat of Ercoli's vehicle. (Defendants' Facts ¶ 22.) The pager was verified as stolen through the LEADS computer and was identified by its owner, Calvin Kelly. (Defendants' Facts ¶ 22.) Ultimately, the articles inventoried from the garage by the officers were identified and recovered by the owners of the stolen motorcycles. (Defendants' Facts ¶ 20.)

On August 16, 2001, two criminal complaints were filed against Ercoli. (Defendants' Facts ¶ 23; Defendants Facts, Exhibit E.) Ercoli was charged with obstructing a police officer (725 ILCS 5/31-1(a)) for running from the scene in response to Tatgenhorst's request for identification. (Defendants' Facts, Exhibit E.) Ercoli was also charged with the criminal offense of possession of stolen property (720 ILCS 5/16-1(a)(4)) as a result of the stolen pager/computer found in the back seat of his car. (Defendants' Facts, Exhibit E.) The two criminal charges were ultimately dismissed by the Cook County State's Attorney on October 22, 2001. (Defendants' Facts ¶ 24.) However, Ercoli was convicted in Indiana on criminal charges relating to the thefts of the two stolen motorcycles. (Defendants' Facts ¶ 24.)

## DISCUSSION

### Count I

### Ercoli's False Arrest Claim

Ercoli charges that he was arrested on August 16, 2001, without a warrant and without probable cause. No arrest warrant was issued for the criminal charges filed in Illinois. So, the question is whether Defendants had probable cause to arrest Ercoli for the obstructing a peace officer and possession of stolen property charges. A determination of whether probable cause existed at the

time of an arrest is normally a mixed question of fact and law. *See Smith v. Lamz*, 321 F.3d 680, 684 (7th Cir. 2003). However, when the relevant material facts leading up to the arrest are not in dispute, the ultimate resolution of the issue is a question of law. *See id.*

The police have probable cause to forcibly detain an individual when the facts and circumstances known to the arresting officer support the reasonable belief that the suspect has committed or is committing a crime. *See Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002), *Maxwell v. City of Indianapolis*, 998 F.2d 431, 433 (7th Cir. 1993). Probable cause is not evaluated "from the perspective of the omniscient observer, but on facts as they would have appeared to a reasonable person in the position of the arresting officer." *See Marshall v. Teske*, 284 F.3d 765 (7th Cir. 2002). Probable cause need not be based on evidence sufficient to support a conviction. *See Driebel*, 298 F.3d at 643. To support a finding of probable cause, the officer is only required to demonstrate the probability or substantial chance of criminal activity. *See Smith*, 321 F.3d at 685. If supported by probable cause, an arrest does not amount to a violation of a constitutional right merely because it later turns out that the complaint was unfounded. *See McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984).

Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law. *See Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir. 2001). Under Illinois law, a party commits the offense of resisting or obstructing a peace officer when he "knowingly resists or obstructs the performance of one known to the person to be a peace officer . . . (in) any authorized act within his official capacity." *See,* 720 ILCS 5/31-1; *People v. Long*, 316 Ill. App. 3d 919, 927, 738 N.E.2d 216, 221 (2000). The act of resisting or obstructing by the defendant must be a physical attempt to thwart or impede the officer in the performance of his duties. *See Long*, 316 Ill. App. 3d

9

at 927, 738 N.E.2d at 221 (2000). Flight from a police officer meets the element of "resists or obstructs" for purposes of the offense. *See People v. Holdman*, 73 Ill.2d 213, 222, 383 N.E.2d 155, 158-59 (1978).

Under § 107-14 of the Illinois Code of Criminal Procedure, a police officer is authorized to detain a person in public for a reasonable period of time when the officer can reasonably infer from the circumstances that the person has committed, is committing, or is about to commit a criminal offense. *See*, 725 ILCS 5/107-14. Section 107-14 codifies the *"Terry"* standard for conducting investigative stops. *See People v. Thomas*, 198 Ill.2d 103, 108, 759 N.E.2d 899, 902 (2001). In the case of *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court held that a non-intrusive detention of a short duration by law enforcement officers, even in the absence of probable cause, does not violate the proscriptions of the Fourth Amendment against unreasonable searches and seizures. A *Terry* stop, however, must be supported by articulate facts which, when taken together with any rational inferences, give rise to a reasonable suspicion that a defendant has been, is or was about to engage in criminal activity. *See Terry*, 392 U.S. at 20-21; *United States v. Smith*, 3 F.3d 1088 (7th Cir. 1993); *People v. Thomas*, 198 Ill.2d 103, 109, 759 N.E.2d 899, 902 (2001). While more than a mere hunch is required, reasonable suspicion is a less demanding standard than probable cause. *See Marshall v. Teske*, 284 F.3d 765, 770 (2002). The purpose of a *Terry* stop is to allow a police officer to either confirm or dispel his suspicions. *See People v. Ross*, 317 Ill. App. 2d 26, 31, 739 N.E.2d 50, 55 (2000). In the context of a resisting or obstructing a peace officer charge, a *Terry* stop constitutes the authorized act of a police officer. *See People v. Johnson*, 285 Ill. App. 3d 307, 309, 674 N.E.2d 487, 488 (1996).

In the instant case, the resisting or obstructing a peace officer charge lodged against Ercoli

was supported by probable cause. Tatgenhorst reasonably believed that criminal activity was afoot when he requested Teune's and Ercoli's identification after observing them walking in the rain on the shoulder of the road at 2:00 a.m., dressed in dark clothing and black stocking caps, in an area where no residences were located and all businesses were closed. In Tatgenhorst's experience, it was highly unusual for pedestrians to traverse the area, especially at 2:00 a.m. Tatgenhorst merely asked for the parties' identification – a non-intrusive request requiring only seconds to comply. Ercoli was identified by both Teune and Tatgenhorst as the party who fled after the request for identification was made.

In response, Ercoli claims that Tatgenhorst's affidavit was incorrect because only Teune was wearing a black stocking cap and dark clothing, while he was wearing a baseball cap, with a medium green shirt and blue jeans. (Ercoli's response pp. 2-3.) He also argues that there were houses and a trailer park in the vicinity. (*Id.* p. 3.) Even assuming Ercoli's contentions are true, they do not refute the fact that Teune was wearing dark clothing and a stocking cap and that the pair were walking in the rain on the shoulder of the road at 2:00 a.m. Tatgenhorst's request for identification was limited in scope and "reasonably related to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20, 27. The court accordingly finds that Tatgenhorst acted reasonably in suspecting that criminal activity was afoot before requesting the parties' identification.

Ercoli appears to argue that probable cause to arrest cannot be established by his failure to produce identification. However, the basis for the resisting or obstructing a peace officer arrest was Ercoli's flight from the scene, not his refusal to produce his identification. (Defendants' Facts Exhibit E.) A suspect's "actual flight from an officer may certainly provide information to ripen an officers preexisting suspicions into probable cause." *Tom v. Voida*, 963 F.2d 952, 960 (7th Cir.

1992); *see also People v. Johnson*, 285 Ill.App.3d 307, 309, 674 N.E.2d 487, 488 (1996) (flight meets the element of a physical attempt to thwart or impede a police officer necessary for a resisting or obstructing charge). Ercoli admits that he fled because he identified Tatgenhorst as a police officer. Although he asserts that his flight was because of a fear of police in general, this does not constitute an affirmative defense to the charge of resisting a peace officer. At any rate, the court need not determine Ercoli's guilt or innocence, but only whether there was probable cause for the arrest. The court accordingly finds that probable cause supported Ercoli's arrest for resisting or obstructing a peace officer.

Similarly, Ercoli's arrest for the charge of possession of stolen property also passes constitutional muster. *See* 720 ILCS 5/16-1(a). Sergeant Vandenburgh identified the "web-link wireless pocket computer pager" located in the back seat of Ercoli's vehicle as an item taken in one of the motorcycle thefts. (Defendants' Facts ¶ 21.) Teune also informed the police that he had observed the computer/pager in a pouch removed from one of the stolen motorcycles. (Defendants' Facts, Exhibit C.) The computer/pager was verified as stolen through the LEADS computer. (Defendants' Facts ¶ 22.) Evidence relating to the motorcycle thefts was found in a garage used by Ercoli. (Defendants' Facts ¶ 20.) Ercoli's predisposition to larceny was supported by Teune's statements to both Tatgenhorst and Kirby. (Defendants' Facts ¶¶ 6-7.) Burglar tools were located under the hood of Ercoli's vehicle. (Defendants' Facts ¶ 16.)

Ercoli argues that his arrest for possession of stolen property was without probable cause because the facts supporting the charge were not known by the police until after he was detained. Ercoli does not dispute that stolen property was found in his vehicle nor does he provide a competent factual basis for his argument. Even if the police did not have probable cause to arrest Ercoli for the

stolen property offense when he was initially taken into custody on August 16, 2001, they had probable cause to lodge the charge when it was filed later that day. (Defendants' Facts, Exhibit E.) Moreover any facts discovered by the police after the initial arrest are irrelevant to a determination as to whether probable cause existed at the time a party was taken into custody. *See Smith v. Ball State Univ.*, 295 F.3d 763, 769 (7th Cir. 2002). As discussed above, the police had probable cause to arrest Ercoli for the charge of resisting or obstructing a peace officer at the time he was picked up. The court accordingly finds that the charge of possession of stolen property was supported by probable cause at the time the criminal complaint was prepared.

## The Search of Ercoli's Vehicle

Ercoli also complains that the search and seizure of his vehicle violated his rights under the Fourth Amendment. The "automobile exception" authorizes the warrantless search and seizure of a vehicle so long as the search is justified by probable cause. *See Chambers v. Maroney*, 399 U.S. 42, 48 (1970); *United States v. Rivera*, 825 F.2d 152, 158 (7th Cir. 1987). The automobile exception recognizes both the inherently mobile nature of an automobile and the diminished expectation of privacy that an individual has in his car. *See Rivera*, 825 F.2d at 158. A warrantless search of an automobile is valid under the Fourth Amendment if probable cause exists to believe that evidence of a crime is located in the vehicle. *See Chambers*, 399 U.S. at 47-50; *People v. Bell*, 110 Ill. App. 3d 291, 293, 442 N.E.2d 291, 293 (1982). If probable cause to search a vehicle exists, a warrantless search is also authorized once the vehicle is impounded. *See Texas v. White*, 423 U.S. 67, 68 (1975).

In the instant case, Teune admitted to Tatgenhorst that Ercoli had driven the two of them to the scene. Ercoli's vehicle was located in close proximity to the location of the proposed burglary.

13

Ercoli fled the scene when Tatgenhorst requested his identification. Teune confessed to Tatgenhorst that he and Ercoli were on their way to commit a burglary. A pat-down search by Tatgenhorst revealed two small crowbars, latex gloves, and a long-handled screwdriver in Teune's possession. Teune advised Tatgenhorst that he had information relating to other criminal activity by Ercoli. Ercoli was in a position to remove his automobile from the scene given his successful flight from Tatgenhorst. In light of the foregoing, Tatgenhorst's impoundment of Ercoli's vehicle was based upon a reasonable belief that the automobile had evidence relating to the (admitted) conspiracy to commit burglary, the offense of possession of burglary tools, or other additional charges. The search and seizure of a vehicle has been held lawful under similar factual scenarios. *See Chambers*, 399 U.S. at 47-52; *Bell*, 110 Ill. App. 3d at 293-94, 442 N.E.2d at 293-94; *People v. Roberson*, 46 Ill. App. 3d 750, 753-54, 361 N.E.2d 116, 119 (1977).

In response, Ercoli appears to argue that the automobile should not have been towed because Teune was not a reliable source of information regarding their plan to burglarize a nearby tavern. However, "[a]dmissions of crime ... carry their own indicia of credibility--sufficient at least to support a finding of probable cause ... That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct." *United States v. Harris*, 403 U.S. 573, 583-84 (1971); *see also United States v. Johnson*, 289 F.3d 1034, 1039 (7th Cir. 2002) (reasoning that informant made statement against penal interest by admitting prior drug distribution and use); *People v. House*, 141 Ill.2d 323, 369-70, 566 N.E.2d 259, 280 (1990) (information provided by co-offender is sufficiently reliable to establish probable cause). The court accordingly finds that the search and seizure of Ercoli's vehicle was supported by probable cause.

Ercoli appears to take issue with Kirby's statement that the stolen computer-pager described

by Sergeant Vandenburgh was in plain view in Ercoli's vehicle. The scope of a warrantless search of an automobile is defined by the object of the search and the places in which there is probable cause to believe that it may be found. *See United States v. Ross*, 456 U.S. 798, 824 (1982). Ercoli's vehicle was seized by the police to determine whether it contained evidence relating to conspiracy to commit burglary, the offense of possession of burglary tools or similar crimes involving theft as admitted by Teune. Even if the computer-pager was not in plain view, the court accordingly finds that any search of Ercoli's vehicle was reasonable in light of the purpose of the seizure.

### **Qualified Immunity**

The purpose of qualified immunity is to protect "all but the plainly incompetent or those who knowingly violate the law." *See Malley v. Briggs*, 475 U.S. 335, 341 (1986). The doctrine of qualified immunity "erects a substantial barrier for plaintiffs, and appropriately so" as governmental employees with discretionary duties should not be exposed to financial peril when forced to make decisions in the absence of clearly established precedent. *See Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). A two-step approach is used in considering a qualified immunity defense. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). "The first inquiry must be whether a constitutional right would have been violated under the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered on a more specific level." *See Id.*, at 200. A negative answer to either prong requires granting the qualified immunity defense. *See Forman v. Richmond Police Department*, 104 F.3d 950, 957 (7th Cir. 1996).

The defense of qualified immunity is available if a reasonable police officer could have mistakenly believed that probable cause existed – also described as "arguable probable cause." *See Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001); *Humphrey v. Staszak*, 148 F.3d 719, 725

15

(7th Cir. 1998). "The question . . . is whether there was any reasonable basis to suppose there was probable cause." *See Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004). In determining whether a defendant's actions were objectively reasonable at the time they were taken, "(T)he court should ask if the officer acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be considered several years after the fact." *See Humphrey v. Staszak*, 148 F.3d at 725.

In the instant case, the admitted facts, construed in a light most favorable to Ercoli, show that a constitutional violation did not occur. As discussed above, Ercoli's Fourth Amendment rights were not violated as a result of his arrest for obstructing a peace officer, his arrest for possession of stolen property, or the impoundment of his vehicle because the actions of the police were supported by probable cause. The court accordingly finds that Kirby, Dorian, and Tatgenhorst are entitled to qualified immunity because probable cause existed to charge Ercoli with the criminal offense of conspiracy to commit burglary.

**Count II**

Count II of the amended complaint alleges that Ercoli's Fourth Amendment rights were violated through the search of his residence and the removal of various items of personal property by the police without a warrant or probable cause. However, neither Kirby, Dorian, nor Tatgenhorst ever entered Ercoli's residence. (Defendants' Facts ¶ 19.) The search of the garage, a common area, was authorized by both Teune and the landlord. (Defendants' Facts ¶¶ 18-19.) *See United States v. Matlock*, 415 U.S. 164, 171 (1974) (person who possesses authority over a common area may consent to search). The police had probable cause to remove the items from the garage based upon a reasonable belief that the seized property included the evidence of a crime. (Defendants' Facts ¶¶

18-20.)

In his response, Ercoli contends that Defendants entered his residence; however, his Exhibits 5A and 6B show that Sergeant Vandenburgh may have entered his residence,[1] not Kirby, Dorian, or Tatgenhorst. The court accordingly finds that Defendants did not violate Ercoli's Fourth Amendment rights.

## CONCLUSION

For the foregoing reasons, the court grants defendants Daniel Kirby, Brian Dorian, and Dennis Tatgenhorst's motion for summary judgment and dismisses them from this action.

**SO ORDERED**  ENTERED: JUL -1 2005

**HON. RONALD A. GUZMÁN**
**United States District Judge**

---

[1] Sergeant Vandenburgh is not a part of this motion for summary judgment. Whether or not Sergeant Vandenburgh entered Ercoli's residence illegally will be the issue of another motion.

17